COMMONWEALTH *vs.* ANN L. TOWERS.

No. 92-P-1178.

Plymouth. September 21, 1993. - December 1, 1993.

Present: SMITH, KAPLAN, & IRELAND, JJ.

*Practice, Criminal,* Waiver of trial by jury. *Constitutional Law,* Waiver of constitutional rights. *Waiver. Motor Vehicle,* Operating under the influence.

In a criminal case, the record of a plea colloquy was not adequate to support a finding that the defendant's waiver of her right to a jury trial was made voluntarily and intelligently. [558-560]

Evidence at the trial of a complaint for operating a motor vehicle while under the influence of alcohol was sufficient to establish the element of operation. [561]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on December 12, 1988.

In the jury session of that division, the case was heard by *Joseph D. Clancy,* J.

*William T. Walsh, Jr.,* for the defendant.

*Kathleen A. Reagan,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. Tried, jury-waived, in a so-called jury-of-six proceeding in District Court, Ann Towers was convicted of the crime of operating a motor vehicle while under the influence of alcohol (G. L. c. 90, § 24). In her appeal to this court, she claims that her waiver of the right to trial by jury should be voided because she is not shown to have made it freely and upon adequate knowledge. She claims also that, on the substantive evidence of the alleged crime, she was entitled to, but was denied, a required finding of not guilty, and that the court improperly considered extraneous matter in ruling on that issue. We hold that the first claim is justified,

the others are not, and so the conviction must be reversed for a new trial.

1. To be constitutionally effective, a defendant's waiver of jury trial must have been made voluntarily and intelligently. See *Patton* v. *United States*, 281 U.S. 276, 312 (1930). But to act intelligently, the defendant (assuming mental competency) needs at least a general understanding of the nature of the election and its consequences. See *United States* v. *Scott*, 583 F.2d 362, 364 (7th Cir. 1978).

In the case of *Ciummei* v. *Commonwealth*, 378 Mass. 504, 509 (1979),[1] the Supreme Judicial Court, in order to provide a modicum of assurance that defendants did in fact recognize what was involved in the choice before making it, directed trial judges to engage in an appropriate colloquy with them.[2] Later, in *Commonwealth* v. *Schofield*, 391 Mass. 772, 775 (1984), the court found occasion to remind the judges and the bar that the colloquy need not follow a fixed formula; it may vary from case to case, differ in this or that detail, provided the essentials of the procedure are maintained. Cf. *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 496 n.9 (1985). Otherwise stated, the record — the colloquy together with any other relevant record material[3] — must be such as to support a finding by the judge that the defendant acted without coercion and with fair understanding. See *Commonwealth* v. *Schofield*, 391 Mass. at 776.

In the present case, any support for the finding rests on the colloquy alone. It was as follows:

> THE JUDGE: "Do you wish to go jury waived in this case?"
> Ms. TOWERS: "Yah."
> THE JUDGE: "Do you understand what you're doing?"
> Ms. TOWERS: "Yah."

---

[1] For a connected Federal case, see *Ciummei* v. *Amaral*, 493 F.Supp. 938 (D. Mass. 1980).

[2] This cannot be dispensed with in our practice. See *Commonwealth* v. *Thetonia*, 27 Mass. App. Ct. 783, 783 (1989).

[3] As to the latter, see *Commonwealth* v. *Schofield*, 16 Mass. App. Ct. 199, 203 n.4 (1983) (majority opinion), *S.C.*, 391 Mass. 772, 776 (1984).

THE JUDGE: "I just want to make sure you understand all rights, that's all. You have a right to a jury trial by constitution [*sic*] and it would be up to the jury, not me, to determine if you are guilty or not guilty. The only function that I would have, in the event that you were found guilty, to sentence you. Do you understand that?"
Ms. TOWERS: "Yah."
THE JUDGE: "Have you discussed it with your attorney?"
Ms. TOWERS: "Yes."
THE JUDGE: "Okay."

Although the judge refers to jury trial, there is no description here of what such trial consists of, so as to put it in any meaningful apposition to trial by judge, which also goes undescribed. The colloquy is instinct with the erroneous suggestion that the judge's only function in a jury trial is to pronounce sentence if guilt is found. The defendant said yes to having discussed the matter with her attorney, who was present, but the content was not of record, see *Commonwealth* v. *Abreu*, 391 Mass. 777, 780 (1984). An inquiry about the defendant's level of education seems a common and significant element of a colloquy but was absent here, and, especially as the crime to be tried involved alcohol, one might have expected the judge to inquire whether the defendant imbibed that day and thus compromised voluntariness. The colloquy has little of the formality or solemnity that should attach to such a procedure. The reference to the constitution appears garbled, as the Commonwealth acknowledges by interpolating "[*sic*]."

It should be emphasized that we do not aim, nor did the Supreme Judicial Court, to describe or hint at a specific form of words that will comprise a minimally adequate colloquy. Rather the question in each instance is whether, on the whole, the record made supports the required finding.

The Commonwealth refers to the colloquy in the *Schofield* case. A majority of our court thought it was inadequate, but the Supreme Judicial Court found it sufficient. See *Commonwealth* v. *Schofield*, 16 Mass. App. Ct. 199 (1983), *S.C.*, 391

Mass. 772 (1984). We reproduce it in an appendix hereto. The Commonwealth suggests that, as the *Schofield* colloquy finally passed as adequate, so, on comparison, should the present colloquy. We think comparison heads in the opposite direction.

Here is the court's comment on the *Schofield* colloquy in ruling on a companion case, *Commonwealth* v. *Abreu*, 391 Mass. at 780: "In *Schofield* we found the colloquy adequate although the trial judge there did not describe in detail all elements of trial by jury. Nonetheless, the judge told the defendant that a jury consists of twelve persons, that the right to trial by jury is a 'fundamental right' and that if the right was waived the judge would decide his guilt or innocence. The judge also inquired into the defendant's educational background and asked whether the defendant's waiver was based on any offers or promises. This colloquy on the record, occurring contemporaneously with the defendant's waiver of his right to a jury trial, was sufficient to sustain the judge's finding that the waiver was voluntary and intelligent." (Footnote omitted.) No such passport to validity could be issued to the present colloquy. It more nearly resembles *Abreu, supra* at 778-780, where the judge asked whether the defendant waived jury trial and wanted the case to be heard by a single justice: that colloquy was found insufficient.

Where a judge tries a case and convicts fairly on the merits, there is a natural temptation to palliate the judge's earlier carelessness in carrying out a threshold procedural protection; but if this is indulged, there will be a progressive lowering or debasing of the protection actually accorded defendants. The temptation should be resisted, lest we suffer the reproach (paraphrasing Macbeth) that we keep the word of promise to the ear and break it to the hope.[4]

---

[4]Talk in appellate decisions of what is or is not minimally sufficient is not the best guide to practice. Although judges need not follow verbatim any "model" colloquy, they can take inspiration from the models. See Jury Trial Manual for Criminal Offenses Tried in District Court, Appendix II, Jury Waiver Colloquy (1987); Smith, Criminal Practice and Procedure § 1654 (2d ed. 1983).

2. The defendant contends that the Commonwealth did not prove illicit "operation" of the vehicle by her to the point where a trier could rationally find guilt, cf. *Commonwealth v. Latimore*, 378 Mass. 671, 677-678 (1979), and so she is entitled to judgment.

The judge could accept the following as a summary of the evidence. When officers arrived at Montello and East Nielson Streets, Brockton, in the early morning of December 10, 1988, they found the defendant beside her car, which stood off the road on a sidewalk area in a construction site; the keys were in the ignition and the engine was running. The car showed front end damage. Nearby, parked on Montello Street, was a car with rear end damage; the owner lived across the street and appeared on the scene and spoke to the officers. The defendant "told [one of the officers] she was driving the vehicle — she was operating." From observation and sobriety tests on the spot, the defendant appeared to be intoxicated. We think a trier could infer with reason that the defendant had driven while drunk on Montello Street and struck the parked car.[5]

3. At the close of the evidence, the judge said there was enough to convict, then inquired why the trial came so late, and was told that it was due to sundry defaults. The defendant suggests that the judge's view of the evidence may have been colored by his reaction to the defaults. We need say no more than that this overlooks the temporal sequence.

*Judgment reversed.*
*Finding set aside.*

---

[5]In negating the suggestion of a possibility that the defendant's admission was a figment of her intoxicated state, the Commonwealth is able to distinguish *Commonwealth* v. *Leonard*, 401 Mass. 470 (1988), and to find support in *Commonwealth* v. *Hilton*, 398 Mass. 63 (1986), *Commonwealth* v. *Otmishi*, 398 Mass. 69 (1986), and *Commonwealth* v. *McNelley*, 28 Mass. App. Ct. 985 (1990).

## APPENDIX[1]

THE JUDGE: "Mr. Schofield, my name is Zobel and I'm the Justice of the Superior Court who's going to be trying this case. And I understand that you want to waive your right to a jury."

THE DEFENDANT: "Yes, your Honor."

THE JUDGE: "Now, before I can approve of your request to waive your right to a jury, I have to be persuaded that you understand all your rights and are giving them up voluntarily. You understand?"

THE DEFENDANT: "Yes."

THE JUDGE: "Now, I'm going to ask you some questions. If any of my questions are not clear, you just tell me, okay?"

THE DEFENDANT: "Yes." [Then followed preliminary questions concerning Schofield's age (twenty-seven, at the time of trial), education (ninth grade), occupation (cook), and military service (none)].

THE JUDGE: "You understand that a jury trial means that the twelve people in a jury box decide whether or not you are guilty?"

THE DEFENDANT: "Yes, I do."

THE JUDGE: "And if you give up that right to a jury trial, it means that a judge, in this case, me, I will decide ___"

THE DEFENDANT: "Yes, I understand."

THE JUDGE: "—the case? A jury trial is a very fundamental right. You understand that?"

THE DEFENDANT: "Yes, I do."

THE JUDGE: "That's why I have to be very sure that you are willing to give up that right and are doing it freely and voluntarily. You understand that?"

THE DEFENDANT: "Yes."

THE JUDGE: "Has anyone promised you or offered you anything to make you give up your right to a jury trial?"

THE DEFENDANT: "No, I have done it on my own. I volunteered."

THE JUDGE: "Have you discussed this with Mr. Gorman, your lawyer?"

THE DEFENDANT: "Yes, I have."

THE JUDGE: "Okay. And you are satisfied with the advice which Mr. Gorman has given you?"

THE DEFENDANT: "Yes. I am."

. . . .

THE JUDGE: "All right. I find that Mr. Schofield is fully aware of his right and that he has knowingly and purposefully and intelligently waived his right to a trial by a jury and I accept the waiver."

---

[1]*Commonwealth* v. *Schofield*, 391 Mass. 772, 773 n.1 (1984).