### State of Vermont v. Shawn L. West

[667 A.2d 540]

No. 94-231

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 1, 1995

---

*Scot Kline*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Dooley, J.** Defendant appeals his conviction by court of domestic assault in violation of 13 V.S.A. § 1042. He argues that (1) his jury trial waiver was invalid because the court failed to comply with V.R.Cr.P. 23(a), and (2) the evidence was insufficient to support the conviction. We conclude that defendant's conviction is supported by the evidence, but we reverse and remand for a new trial because his waiver of his right to trial by jury was invalid.

## I.

Double jeopardy concerns require that we first address whether the evidence was sufficient to support defendant's conviction. *State v. Durenleau*, 163 Vt. 8, 15, 652 A.2d 981, 984 (1994). To determine whether the evidence is sufficient, we must consider whether the evidence, taken in the light most favorable to the State and excluding modifying evidence, fairly and reasonably supports a finding of guilt beyond a reasonable doubt. *State v. Robar*, 157 Vt. 387, 391, 601 A.2d 1376, 1378 (1991). At trial, the State presented two witnesses, a police officer and a friend of complainant. Complainant did not testify for the State. The police officer testified that complainant and her friend entered the station on August 9, 1993 at 1:40 a.m. Complainant was crying and bleeding from the nose. She had dried blood on her face

and fresh blood on her clothes. She was upset. The officer testified that complainant said that she was "sick of it," and that her boyfriend had punched her in the face ten minutes before. These hearsay statements were admitted, over defense counsel's objection, as excited utterances. See V.R.E. 803(2). The officer also testified, without objection, that complainant's friend had said that she had seen the assault. The officer took a picture of complainant, and both complainant and her friend provided written statements of the incident. The officer stated that the friend smelled like she had been drinking but that neither of the women appeared intoxicated.

Later, complainant identified defendant as her boyfriend and he was brought into the station. Complainant's identification and description of defendant were not admitted into evidence because she had calmed down by the time she made these statements. The officer testified, however, regarding defendant's behavior at the station. She said that defendant was intoxicated and belligerent, swore at the officers and complainant, and was so violent that complainant would not go into the same room with him, although he was handcuffed to the wall. Defendant yelled, "You'll never pin this on me."

The State's second witness was complainant's friend. She testified that she had gone out with her boyfriend, defendant and complainant on the night in question, but claimed that she had been drinking that night and did not remember the incident or going to the police station. She recognized her handwriting and her signature on the statement she had written at the police station. This statement was admitted into evidence without objection. It stated that she had seen defendant pulling complainant's hair and that she had called to defendant's father, who came outside to break up the fight. She also testified that defendant was complainant's boyfriend. At the close of the State's case, defense counsel moved to dismiss based on insufficiency of the evidence. He claimed that the evidence did not establish the identity of the person who had caused the injury to complainant.

The court issued a written decision, concluding that the evidence was sufficient to establish beyond a reasonable doubt that defendant had recklessly caused bodily injury to another person. It found no evidence, however, to show that complainant was a member of defendant's household, an element of domestic assault, 13 V.S.A. § 1042, but granted the State ten days to bring to the court's attention any testimony from the trial that established this element. The court concluded that defendant was guilty of simple assault, a lesser-included offense of domestic assault, unless the State was able

to point out the evidence necessary to establish domestic assault. The State did not respond, and the court entered a guilty verdict on the charge of simple assault.

At the sentencing hearing, defense counsel maintained that he had understood that he would be given an opportunity to put on evidence if the motion to dismiss for insufficient evidence was not granted. Consequently, the court scheduled the case for further trial. The defense presented two witnesses, complainant and defendant. Complainant testified that she and defendant had been boyfriend and girlfriend and that they had two children together. She remembered going out with defendant to a party on the night in question and leaving the party with defendant, her friend and the friend's boyfriend. Complainant drove the car, which belonged to her friend. She remembered driving to defendant's parents' house. She did not remember anything after that point until she woke up at that house the next morning. She did not remember who hit her. She recognized the statement that she wrote but did not remember writing it. It was not offered into evidence.

Defendant testified that he remembered leaving the party but that he was intoxicated and fell asleep in the car. The next thing he remembered was his father grabbing him. He did not remember hitting complainant. He denied hitting her because he would not do such a thing. He then admitted to a previous conviction for simple assault against complainant. On rebuttal, the police officer testified that complainant and her friend were at the station several hours that night, that she observed them to ensure that they were both sober before requesting written statements, and that she allowed them to drive when they left the station.

The trial court issued a supplemental opinion, finding that complainant's testimony was not credible. It further found that the evidence presented by the defense established beyond a reasonable doubt that defendant and complainant were household members, and consequently, concluded that defendant was guilty of domestic assault.

Defendant argues that his conviction cannot be upheld because (1) the sole evidence to support it is hearsay evidence, which was not shown to be especially reliable, (2) the court improperly admitted defendant's statements made at the station under V.R.E. 801(d)(2)(A) and improperly relied on the statements as propensity evidence, and (3) the State presented no evidence indicating that complainant was a member of defendant's household.

### A.

Defendant claims that the only evidence that identifies him as the perpetrator was complainant's hearsay statement, which was not shown to be especially reliable, and therefore, was insufficient to support the conviction. He does not challenge the admissibility of the excited utterance; rather, he maintains that hearsay alone is insufficient to support a conviction unless it meets specific standards of reliability. Defendant argues that an excited utterance is not reliable because the excitement from which we infer reliability — as this mental state prevents fabrication — also impairs the accuracy of the perceptions.

Defendant relies on *Robar*, in which we reversed the defendant's conviction because the only evidence identifying the defendant as the perpetrator was the inquest testimony of one of the State's witnesses, who testified at trial that she had no memory of the inquest. 157 Vt. at 395–96, 601 A.2d at 1380. We held that "[t]he State cannot meet its burden of proof if the sole evidence upon which conviction is based is past recollection recorded or a prior inconsistent statement, unless the prior statement meets specific standards of reliability." *Id.* at 395, 601 A.2d at 1380. We concluded the inquest testimony was not reliable because (1) it was given six months after the event, (2) the circumstances and date when the statement was first made to police were unknown, and (3) it was given as part of a deal involving potential charges against the witness, upon the incorrect understanding that the defendant had confessed. *Id.* at 395–96, 601 A.2d at 1380.

The rule in *Robar* was adopted from *State v. Mancine*, 590 A.2d 1107, 1117 (N.J. 1991), in which the Supreme Court of New Jersey rejected a per se rule barring a conviction based solely on evidence obtained from a prior inconsistent statement, and ruled that "substantive elements of a criminal charge may be proven through a prior inconsistent statement alone, provided that the statement was made under circumstances supporting its reliability and the defendant has the opportunity to cross-examine the declarant." *Id.* at 1119. We do not reach the confrontation issue here because defendant has not specifically briefed the confrontation issue, although he raised it below, and because defendant had the opportunity to "cross-examine" the declarant when he called her in his defense.

The *Mancine* court concluded that a prior inconsistent statement was sufficient to support a conviction if "the statement is generally corroborated and its reliability is supported by the circumstances under which it was given." *Id.* at 1117. It therefore upheld a conviction

based on a prior inconsistent statement where (1) the statement was partially corroborated, (2) it was made shortly after the crime, and (3) there was no suspicion of coercive tactics by police because the witness was not a suspect. *Id.* at 1118–19.

■ *Robar* is easily distinguished from this appeal. First, in this case, complainant's hearsay statement identifying her boyfriend as the perpetrator was corroborated by the friend's written statement, which identified "Shawn" as the person who pulled complainant's hair and fought with her at 1:30 a.m. in front of his parents' house. It was also corroborated by the officer's observations of complainant's physical and emotional state, as well as the photograph of the complainant. Further, the friend testified at trial that she and her boyfriend went out on the evening in question with complainant and her boyfriend, defendant. "[C]orroborative evidence need not tack down each and every fact and allegation," *id.* at 1119, "as long as the statement is generally corroborated." *Id.* at 1117.

■ Second, the statement was made minutes after the assault. We agree with the *Mancine* court, which found that a statement made shortly after the crime "seems more indicative of reliability than a recantation on trial's eve two years after the crime and her reconciliation with defendant." *Id.* at 1118. Indeed, recantation is common in cases of domestic abuse because victims fear retaliation from the batterer. C. Klein & L. Orloff, *Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law,* 21 Hofstra L. Rev. 801, 1187 (1993); see also M. Dutton, *Understanding Women's Responses to Domestic Violence: A Redefinition of Battered Woman Syndrome,* 21 Hofstra L. Rev. 1191, 1232 (1993) (fear of retaliation following separation is reasonable; "most women who are killed by their abusive partners are killed once they have left the relationship").

Here, complainant failed to appear for trial twice when subpoenaed by the State; she then appeared to testify for the defense, maintaining that she had no recollection of the events in question. The court found that complainant's testimony at trial was not credible. This finding was inevitable, based in part on the officer's testimony that complainant seemed coherent and articulate at the police station, rebutting her testimony that her memory was impaired due to intoxication. In context, the trial court's findings regarding complainant's credibility are fully supported.

█ Third, the circumstances under which the excited utterance was made show no indication of coercive tactics. Unlike the witness in *Robar*, complainant here was not making a deal with the police, nor was she a suspect in any crime. She came to the police station to seek protection, and consequently, had a personal interest in correctly identifying the perpetrator.

We conclude that complainant's excited utterance in context is sufficiently reliable to support defendant's identification as the perpetrator beyond a reasonable doubt. See *Watkins v. State*, 360 S.E.2d 47, 48 (Ga. Ct. App. 1987) (officer's testimony of complainant's report, medical technician's testimony of complainant's injuries, and testimony regarding disordered scene was sufficient to find defendant guilty beyond reasonable doubt although complainant testified for defense and recanted her statements).

## B.

██ Defendant also argues that the court erroneously admitted and relied on statements made by him when he was arrested and brought to the station. These statements were admitted as admissions under V.R.E. 801(d)(2)(A). Defendant contends that the statements were improperly admitted because they were not adverse to defendant's interests. Admissions under V.R.E. 801(d)(2)(A), however, "include any statement made by and offered against a party opponent." *State v. Bernier*, 157 Vt. 265, 268, 597 A.2d 789, 791 (1991). "They need not be against the declarant's interest when made." *Id.* Defendant also maintains that the statements show only anger at being arrested and are not probative of whether he assaulted complainant. The trial court has broad discretion on issues of relevancy, and will be upheld absent an abuse of discretion. *Id.* We find no abuse of discretion here as the evidence of defendant's behavior and language was relevant to defendant's state of mind on the evening in question. Cf. *State v. Kelley*, 163 Vt. 325, 328–29, 664 A.2d 708, 710–11 (1995) (evidence of defendant's state of mind shortly before shooting has substantial probative value).

## C.

Finally, defendant maintains that he is entitled to a review of the sufficiency of the evidence based on the State's case standing alone, without consideration of the evidence presented by the defense. He recognizes that a defendant waives any challenge to the trial court's

ruling on a motion for acquittal made at the end of the State's case, when the defendant presents evidence. See *State v. Bressette*, 130 Vt. 321, 322, 292 A.2d 817, 818 (1972). Nonetheless, he urges us to reject this rule. We decline to overrule *Bressette*, and reaffirm the waiver rule adopted by the federal courts and most state courts. See, e.g., *United States v. Cheung*, 836 F.2d 729, 730 n.1 (1st Cir. 1988) (defendant who presented evidence in own behalf waived motion for acquittal at close of government's case); *State v. Nunez*, 806 P.2d 861, 868 (Ariz. 1991) (same); *Hood v. State*, 561 N.E.2d 494, 496 (Ind. 1990) (same); *State v. Henshaw*, 557 A.2d 1204, 1207 (R.I. 1989) (same).

■ Even if we consider the evidence presented by the defense, defendant maintains that the evidence did not establish that he and complainant were "household members," an element of domestic assault. The domestic assault statute adopts the definition of "household members" from 15 V.S.A. § 1101(2), which provides: "'Household members' means persons living together or sharing occupancy and persons who have lived together in a sexual relationship." We conclude that the evidence that (1) complainant and defendant were boyfriend and girlfriend on the night of the assault, (2) had two children together, and (3) shared occupancy of the same residence that night, was sufficient to establish beyond a reasonable doubt that the complainant and defendant were household members.

## II.

Defendant also argues that he is entitled to a new trial because his waiver of a jury trial did not comply with V.R.Cr.P. 23(a). The State counters that defendant should not receive a new trial because he failed to show prejudice from any rule violation and the trial court substantially complied with the purpose of the rule.

Rule 23(a) provides that the court shall not accept a waiver of jury trial without addressing defendant in open court, and informing him and determining that he understands that (1) he may participate in the selection of the twelve members of the jury, (2) any verdict of guilty must be unanimous, and (3) the court alone decides guilt or innocence if the jury is waived. V.R.Cr.P. 23(a).[1] In this case, the entire open-court colloquy was as follows:

> The Court: Mr. West, you understand you're giving up your right to a jury trial?

---

[1]The exact text of V.R.Cr.P. 23(a) that pertains to the on-the-record colloquy is as follows:

Defendant: Yes.

The Court: You understand the *defendant* [sic] will decide both the facts and law on this case?

Defendant: Yes.

The Court: You have signed this document freely and willingly?

Defendant: Yes.

(Emphasis added.)

█ It is clear that this colloquy failed to comply with V.R.Cr.P. 23(a). Of the three messages required to be communicated by Rule 23(a), only the last was addressed at all by the trial court, and even this message was improperly conveyed. The trial court erroneously informed defendant that he, and not the court, could adjudicate his guilt.[2] There was no indication that defendant understood any of the characteristics of the jury trial right or the consequences of a waiver. In *State v. Conn*, 152 Vt. 99, 103, 565 A.2d 246, 248 (1989), we determined that an on-the-record colloquy between a defendant and the trial court is desirable to assure that defendant's jury trial waiver is voluntary, knowing and intelligent, and we quoted at length from a decision of the Massachusetts Supreme Judicial Court, which had required such a colloquy. See *Ciummei v. Commonwealth*, 392 N.E.2d 1186, 1189–90 (Mass. 1979). We concluded that only a personal colloquy will enable the court to ensure the defendant understands the critical information on which the waiver must be based. We rejected the use of preprinted information on a printed form because of the great risk such information would neither be read nor absorbed. See *Tucker v. State*, 399 A.2d 931, 932 (Md. Ct. Spec. App.

---

The court shall not accept the defendant's waiver of the right to trial by jury without first, by addressing the defendant personally in open court, informing that person of, and determining that the person understands, the following:

(1) That the jury consists of 12 members of the community, and that the defendant may participate in their selection;

(2) That before the defendant can be convicted, all 12 members of the jury must agree on defendant's guilt;

(3) That where a jury is waived, the court alone decides guilt or innocence in accordance with the facts and the law.

[2] The State has not claimed that there was an error in the transcription of the colloquy. Thus, we assume that the court misspoke. We doubt that defendant seriously believed that he, rather than the court, would determine his guilt. In view of the omissions from the colloquy, we do not have to decide whether the error in specifying the decision-maker would alone be grounds for a new trial.

1979) (waiver on written waiver form does not comply with Maryland Rule 735(d), which requires court to make "inquiry of the defendant on the record" and determine defendant has "knowingly and voluntarily waived the right").

We rejected, however, the approach of the Massachusetts court of announcing a decision requiring such a colloquy prospectively for only future criminal trials. We found that the provision of the Vermont Constitution that requires us to promulgate rules governing practice and procedure in criminal cases, Vt. Const. ch. II, § 37, states a preference for implementing procedural change through rulemaking rather than through decision. *Conn*, 152 Vt. at 105, 565 A.2d at 249. Thus, we referred the question of appropriate rulemaking to our Advisory Committee on the Vermont Rules of Criminal Procedure for action. *Id.* It responded with the amendment to Criminal Rule 23(a), which we adopted in 1992.

Having adopted the amendment to Rule 23(a), we are now required to enforce it. We recently held in *State v. Coita*, 153 Vt. 18, 21, 568 A.2d 424, 426 (1989), that there is nothing in our precedents or those from other jurisdictions that allows us to overlook a violation: "[I]n view of the seriousness of the right to be protected, the cases require 'strict compliance with the rule.'" *Id.* (quoting *United States v. Garrett*, 727 F.2d 1003, 1012 (11th Cir. 1984)).

■ We cannot accept either of the State's arguments why we should overlook noncompliance with the rule. The first — that defendant has failed to show prejudice — was directly addressed by *Coita*. Over a vigorous dissent on this exact point, we held that we "do not apply an absence of prejudice analysis to jury trial waivers because of the nature of the right involved." *Id.* at 21–22, 568 A.2d at 426. We must add that such a requirement would be wholly inconsistent with a prophylactic rule created to ensure that a waiver is informed, voluntary and intelligent. The point of the amendment to Rule 23, as with *Miranda* warnings and other such advice or colloquy requirements, is to create specific requirements to avoid a case-by-case inquiry of the state of mind of the defendant.

The State's second argument is that there was substantial compliance with the requirements of the rule. We recognize that, in the comparable situation presented by Rule 11, we have required only substantial compliance with the colloquy requirements before the court accepts a guilty plea. See *In re Hall*, 143 Vt. 590, 596, 469 A.2d 756, 759 (1983). Although Rule 11 requires the court to advise defendant of specific rights and consequences of a plea of guilty, it

does not require that "the plea hearing judge read verbatim the enumerated rights." *Id.* at 594, 469 A.2d at 758. Instead, it "is enough that the court engages in an open dialogue with the defendant involving a discussion of all of the Rule 11(c) elements to the end that the court is satisfied, and the record substantiates, that the defendant knows and understands the full array of legal consequences that attach to a guilty plea." *Id.* at 595, 469 A.2d at 758; see also *In re Bentley*, 144 Vt. 404, 411, 477 A.2d 980, 983 (1984) (acceptance of guilty plea affirmed where there was "substantial but not complete compliance with Rule 11").

We also recognize that other courts have enforced similar jury trial waiver colloquies, whether imposed by rule or decision, with flexibility. For example, following the decision in *Ciummei*, the Massachusetts court made clear that the decision "established no rigid pattern which must invariably be followed in conducting a colloquy before accepting a waiver of the right to trial by jury." *Commonwealth v. Abreu*, 463 N.E.2d 1184, 1186 (Mass. 1984). Thus, the colloquy may vary from case to case "provided the essentials of the procedure are maintained." *Commonwealth v. Towers*, 623 N.E.2d 489, 490 (Mass. App. Ct. 1993). On appeal, the question to be answered is "whether the colloquy has provided an evidentiary record upon which the trial judge could find the waiver of a defendant was voluntary and intelligent." *Abreu*, 463 N.E.2d at 1186.

■ Despite our recognition that a substantial compliance standard might be appropriate for review of waiver colloquies under Rule 23(a),[3] such a standard would not help the State here. We have to characterize the situation here as total noncompliance with the rule. Two out of three of the required disclosures were not made at all, and the other was made in a garbled manner. Because the disclosures were not made, we cannot determine whether defendant understood the information to be disclosed.

*Reversed and remanded.*

**Morse, J.**, concurring and dissenting. I concur with the Court that the evidence was sufficient to convict defendant, but I dissent to Part II because any error in the jury waiver was de minimis and harmless.

---

[3] We do not view the *Coita* statement that strict compliance is required as an inflexible decision. In *Coita*, the court failed to approve the jury waiver in writing, a specific requirement of the rule. Here, we can enforce the substance and policy of the rule without giving talismanic significance to particular wording.

Defendant, his lawyer, the prosecutor, and the trial judge signed a document entitled in bold print **WAIVER OF RIGHT TO JURY TRIAL**, which said:

> I, the Defendant named above, am charged with the crime of Domestic Assault an offense that is not punishable by death or life imprisonment. I have been informed by the Court and my lawyer that I have the right to have my guilt or innocence determined by a jury after trial. I fully understand that right. I understand that, if I choose to have a jury trial, the jury would be made up of twelve members of the community, and my lawyer and I would take part in choosing which jurors would hear my case. I also understand that, to be convicted, all twelve members of the jury would have to agree that I am guilty beyond a reasonable doubt.
>
> I hereby waive (give up) my right to a trial by jury. I agree to a trial by Court, which means that the Judge alone will decide if I am innocent or guilty after a trial without a jury.

In addition, the trial court spoke to defendant personally in open court in his attorney's presence and determined that defendant "understood" he was "giving up [his] right to a jury trial" and that he had signed the **WAIVER** document "freely and willingly." Nevertheless, this Court requires a more informed waiver in the form of the trial court's oral repetition of information contained in the written waiver.

In fact, this case does not bring into question defendant's "understanding" of what he was giving up. Defendant does not claim he did not understand his waiver nor does he say that he has changed his mind about waiving trial by jury. For all we know, we remand so that defendant may have another bench trial. This case, then, turns on the insistence on technical form regardless of substance, thereby ignoring V.R.Cr.P. 52(a) (error not affecting substantial rights should be "disregarded").*

---

*Because any error was harmless, it could not amount to plain error. V.R.Cr.P. 52(b) (plain error must affect substantial rights). Defendant, who had counsel, did not object to the colloquy under V.R.Cr.P. 23(a); he raises this issue for the first time on appeal. In the comparable situation under V.R.Cr.P. 11, where the defendant fails to object before the trial court, we review alleged errors in a plea colloquy only for plain error. *State v. Thompson*, 162 Vt. 532, 534, 650 A.2d 139, 140 (1994). V.R.Cr.P. 23(a) "requires the court to conduct an inquiry analogous to that required by [V.R.Cr.P.] 11." V.R.Cr.P. 23,

It is indeed difficult to fathom any violation of V.R.Cr.P. 23(a). Defendant was addressed personally in open court and was informed of his right to a jury trial. The details of the right were explained in the document that defendant signed, and in the context of this case, the procedure seems to me to meet the requirement of the rule. If defendant failed to understand the contents of the form and his lawyer's explanation of waiving a jury, a judge's reading of the form from the bench would hardly improve defendant's understanding. The difference between trial by judge and trial by jury is not a difficult concept to grasp. Presumably, defense counsel fully advised defendant about the decision to waive the jury. Usually, jury waiver is counsel's idea in assessing trial strategy. By placing the trial court here in error, the elevation of form over substance is unreasonably high.

The Court relies on *State v. Coita*, 153 Vt. 18, 21, 568 A.2d 424, 426 (1989), to hold that prejudice is irrelevant and "strict compliance with the rule" is required. I do not read *Coita*, which I wrote, as reaching this case. There we reversed because the court did not *affirmatively* indicate its consent to trial by court. We stated:

> Silent acquiescence to a waiver does not assure us that the court thought about the decision — not only from the defendant's point of view, but from the prosecutor's perspective and in the interests of justice.
>
>   . . . .
>
> The court's approval of a waiver may trigger a colloquy with the parties resolving any doubts as to what prompted the waiver and the wisdom of it.

*Id.* at 20, 21, 568 A.2d at 425, 426. Thus, in *Coita* "strict compliance with the rule" required the trial judge to affirmatively indicate the court's consent to waiver of jury trial by defendant. "Strict compliance" in that regard happened here. The judge signed the waiver and spoke to defendant about waiving the jury, and determined that defendant understood. No doubts about the waiver were raised and defendant to this day has not suggested there were any doubts.

I would affirm the conviction.