Following a bench trial, the defendant was convicted of threatening to commit a crime in violation of G. L. c. 275, § 2, and assault and battery on a police officer in violation of G. L. c. 265, § 13D. On appeal, he argues that both convictions should be reversed because (i) they were supported by insufficient evidence, and (ii) the trial judge's colloquy failed to sufficiently ensure that he made a voluntary and intelligent waiver of his right to a jury trial. We agree that the evidence was not sufficient to support the conviction of threatening to commit a crime and, accordingly, that judgment is reversed, the finding is set aside, and judgment shall enter for the defendant on that charge. We also agree that the jury waiver colloquy was inadequate and therefore on the charge of assault and battery on a police officer, the judgment is reversed and the finding is set aside.
Background. In May, 2015, the victim, a mail carrier, was walking on Valentine Street in West Newton when a man approached her. The man got very close, began swearing at her and calling her names, and made gestures at her "like [he was] going to shoot [her]." She became very frightened, believing the man was either going to shoot her or jump on her. As she walked away from the man, she observed him walking towards Chestnut Street. About ten minutes later, she stopped a police officer and reported the incident.
Soon thereafter, Newton police Sergeant Amanda Henrickson[2] (who was at a nearby Newton police station) received a call about the incident. Within two minutes, as she was driving southbound on Chestnut Street, she stopped when she saw several police officers gathered around the defendant on the easterly sidewalk near the location of the incident. She observed that the defendant was "very tense, almost clenching[,] pacing back and forth," and speaking loudly. The defendant failed to respond directly to commands. The police officers arrested the defendant and brought him to the police station.
During booking, the defendant was uncooperative, thrashing his body when police officers attempted to search him and kicking his legs out towards the officers. One officer sprayed the defendant's face twice with pepper spray. In response, the defendant spit on the floor and also onto Henrickson's face and torso.
Discussion. 1. Insufficient evidence of identification. The defendant first contends that his conviction of threatening to commit a crime should be reversed because the Commonwealth presented insufficient evidence identifying him as the individual who threatened the victim. The identification evidence consisted of the victim's physical description of the assailant as a black man with long black hair and baggy clothes.[3] None of these details matched Henrickson's description of the defendant. In particular, Henrickson did not mention the length of the defendant's hair, the fit of his clothes, or his race; instead, she described the defendant as a muscular man of average height wearing long black pants and a black shirt.
The other evidence arguably connecting the defendant to the incident was that he was apprehended near the scene of the crime.[4] However, mere presence at the scene of a crime is not sufficient to sustain a conviction. See Commonwealth v. Mazza, 399 Mass. 395, 399 (1987). Accordingly, even construed in the light most favorable to the Commonwealth and drawing all reasonable and possible inferences in the Commonwealth's favor, Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the evidence was insufficient to support a finding beyond a reasonable doubt that the defendant was the individual who threatened the victim.
2. Assault and battery on a police officer. The defendant next argues that his conviction of assault and battery on a police officer must be overturned because (i) the Commonwealth failed to prove that he committed an intentional act when he spit on Henrickson, and (ii) the trial judge's colloquy did not adequately ensure that he intelligently and voluntarily waived his right to a jury trial. While we disagree that the evidence was insufficient, we agree that the colloquy was inadequate.
i. Sufficiency of the evidence of intent. The defendant argues that the Commonwealth did not produce sufficient evidence to show that the defendant's act of spitting on Henrickson was an intentional act that did not happen accidentally. Commonwealth v. Ford, 424 Mass. 709, 711 (1997). We disagree. After the defendant was sprayed with the pepper spray, he deliberately gathered phlegm into his mouth, turned towards Henrickson, and then spit directly at her, covering both her face and torso. Viewing this evidence in the light most favorable to the Commonwealth, Latimore, 378 Mass. at 676-677, the timing and sequence of these events was sufficient to support the finding that the defendant consciously chose to spit on Henrickson.
ii. Jury waiver. Nonetheless, we are constrained to reverse the conviction because there was insufficient basis in the record to conclude that, on the day of the trial, the defendant's waiver of his right to a jury trial was knowing and voluntary.
We look first to the judge's colloquy. While there is not a "rigid pattern" or any prescribed formula to which trial judges must adhere in conducting the colloquy, Ciummei v. Commonwealth, 378 Mass. 504, 510 (1979), the record must provide sufficient evidence that the defendant "indicate[d] ... 'a comprehension of the nature of the choice' between a bench and jury trial.' " Commonwealth v. Hernandez, 42 Mass. App. Ct. 780, 784 (1997), quoting from Commonwealth v. Schofield, 391 Mass. 772, 775-776 (1984). Here, the colloquy provides insufficient basis on which to conclude that the defendant comprehended the nature of his choice between a bench trial and a jury trial.[5] The trial judge made practically no substantive inquiries of the defendant and provided him with almost no substantive information. Commonwealth v. Towers, 35 Mass. App. Ct. 557, 558-559 (1993) (colloquy was inadequate where "[a]lthough the judge refers to jury trial, there is no description here of what such trial consists of, so as to put it in any meaningful apposition to trial by judge, which also goes undescribed").
In addition to the brief colloquy, the record reflects that the defendant executed a written jury waiver form and that his then-counsel (who was not trial counsel) also signed a certification that he had explained to the defendant the specifics of his right to a jury trial. Both forms, however, were executed five months before the colloquy and trial.[6] See Commonwealth v. Abreu, 391 Mass. 777, 778 (1984) (colloquy must be conducted "contemporaneously with and before accepting any waiver"); Commonwealth v. Pavao, 423 Mass. 798, 803 (1996). Cf. Hernandez, 42 Mass. App. Ct. at 783-785 ; Commonwealth v. Onouha, 46 Mass. App. Ct. 904, 904-905 (1998) (sparse colloquy coupled with contemporaneously signed written waiver adequate). Furthermore, in the five months between the time that the defendant signed the waiver form and the trial, the defendant was evaluated for potential mental health issues.[7]
Under these circumstances, the record was insufficient to conclude that the defendant's waiver of his right to a jury trial was knowing and voluntary. Abreu, 391 Mass. at 778-780. Accordingly, the defendant's conviction of assault and battery on a police officer is reversed and the finding is set aside.
On the charge of threatening to commit a crime, the judgment is reversed, the finding is set aside, and judgment shall enter for the defendant.
On the charge of assault and battery on a police officer, the judgment is reversed and the finding is set aside.

The trial transcript identifies this witness as "Ann Hendrickson"; however, as both parties note, the witness's name is Amanda Henrickson, as reflected on the complaint.

The victim did not make an in-court identification of the defendant as the person who threatened her, and the Commonwealth presented no evidence of an out-of-court identification. Cf. Commonwealth v. Crayton, 470 Mass. 228, 243-244 (2014).

The Commonwealth maintains that the assailant's behavior with the mail carrier was similar to the defendant's behavior when surrounded by numerous officers on Chestnut Street. However, the assailant loomed over the mail carrier, called her names, and made a gesture as if he had a firearm. In contrast, the defendant's behavior when surrounded by several officers was described as tense, pacing, and nonresponsive.

The colloquy is set forth below:
The Court : "Okay. So why don't we do a jury colloquy. [Trial counsel] has explained to you about what that is, right; because you do have your right to a jury trial. But you have chosen to go on a bench trial, right?"
The Defendant : "Yes."
The Court : "So, I have a waiver signed from you from another date which says that you understand that you are waiving your right to a jury trial. And I just want to make sure that that is still the same thing today, right?"
The Defendant : "Yes."
The Court : "So halfway through this trial you cannot decide that all of a sudden you want to go to a jury trial, right?"
The Defendant : "Yes."
The Court : "You're choosing to go through a bench trial, which means a trial before a judge. And that judge is me, right?"
The Defendant : "Yes."
The Court : "Okay."
The Clerk : "You already signed it."
The Defendant : "Oh."
The Court : "So you've already signed it, but I like to give someone an opportunity to make sure they understand on the day of trial that, in fact, you have waived your right to a jury trial, okay?"
The Defendant : "Yes."
The Court : "All right. And you're doing that knowingly and voluntarily, and you've consulted with [trial counsel] about that case, right?"
The Defendant : "Yes."

While on the day of trial, trial counsel spoke to the defendant about, inter alia, waiving his right to a jury, the content of that communication was not of record. Commonwealth v. Abreu, 391 Mass. 777, 780 (1984) ("Nor does the Commonwealth's observation that the defendant was advised by counsel, albeit off the record, regarding the right to trial by jury, make his waiver valid. Ciummei requires that any such colloquy be on the record if it is to be the basis upon which a judge is to conclude a waiver of the right is voluntary and intelligent").

Indeed, during the trial, an outburst by the defendant caused trial counsel to ask for a sidebar during which the trial judge inquired about the defendant's mental health and questioned whether his competency should be determined by a mental health professional.