KEITH D. CIUMMEI vs. COMMONWEALTH.

Suffolk. April 3, 1979. — July 25, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

Constitutional Law, Waiver of trial by jury. Practice, Criminal,
    Waiver of trial by jury.

This court will require a judge in a criminal case to hold a colloquy
    with the defendant to ensure that any waiver of the right to trial
    by jury is made voluntarily and intelligently. [506-511]
Evidence in a proceeding on a writ of error warranted a finding that
    the petitioner, although of limited intelligence, had knowingly and
    voluntarily waived his right to a jury trial. [511-515]

PETITION for writ of error filed in the Supreme Judicial
Court for the county of Suffolk on November 17, 1977.

The case was heard by Braucher, J., on a master's re-
port and was reported by Kaplan, J.

John B. Miller (Robert W. Hagopian with him) for the
petitioner.

Daniel F. Toomey, Assistant District Attorney, for the
Commonwealth.

KAPLAN, J. Keith D. Ciummei, the petitioner in this
writ of error proceeding, was charged by complaint dated
October 30, 1975, with armed robbery of a Worcester
pharmacy on October 29 (G. L. c. 265, § 17).[1] On December
11, 1975, he was brought to trial in Superior Court,
Worcester County. He was represented by counsel. At the
threshold, he waived in writing his right to a jury. On the
evidence, he was found by the judge guilty of the "includ-
ed" offense of unarmed robbery (G. L. c. 265, § 19), and

_____

[1] Indictment was waived with consent of the Commonwealth and
the case went forward on the complaint. G. L. c. 263, § 4A. See Mass.
R. Crim. P. 3(b) post 847 (effective July 1, 1979).

sentenced to a term of five to ten years at the Massachusetts Correctional Institution at Walpole, to be served at M.C.I. Bridgewater. Appeal was claimed but not pursued. An application to the Appellate Division for sentence review was filed but withdrawn.

On November 17, 1977, the petitioner filed the present petition for writ of error in the Supreme Judicial Court for Suffolk County, alleging that the conviction must be vacated because (1) it did not appear on the face of the trial record that the petitioner had acted voluntarily and intelligently in waiving his jury right; and (2) if evidence outside that record could be received, it would show that his waiver was in fact not voluntary or intelligent. As the trial had not been made subject to G. L. c. 278, §§ 33A-33G, the writ issued as of course (see G. L. c. 250, § 11), and the matter was referred to a special master. The master held a hearing in which evidence was offered by both the petitioner and the Commonwealth. In his report, the master, proceeding on the view that the law permitted the receipt not only of the trial record but of evidence aliunde, went on to find on the basis of detailed analysis of all the evidence received that the petitioner's jury waiver was voluntary and intelligent. He recommended affirmance of the conviction.[2] A single justice of this court confirmed the report; the parties moved respectively for judgment in their favor; and the matter was then reserved and reported for decision by the full bench.[3] Although the two points raised by the petitioner could have been but were not raised at trial, we choose to consider them. See *Commonwealth* v. *Hill*, 375 Mass. 50, 53 (1978); *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). We conclude that the conviction should be affirmed.

---

[2] See n.15 below as to certain collateral observations by the master.

[3] The case was bracketed for argument with *Costarelli, petitioner, post* 516 (1979), which had also been referred to the special master. His report in the present case referred to that in *Costarelli* on the question of receiving extrinsic evidence.

1. *The question of confinement to the trial record.* Here we recite the bare facts of the trial, leaving to the next point an ampler account, including certain background facts. At the commencement of trial on December 11, 1975, the waiver form signed by the defendant and witnessed by his counsel was placed on file. Dr. Elliot R. Reiner, a staff psychiatrist of the Worcester State Hospital, had examined the petitioner pursuant to G. L. c. 123, § 15 (*a*), and § 18 (*a*), and his two reports, dated November 25, 1975, had declared the petitioner competent to stand trial. About a month earlier, a report reaching the same conclusion had been rendered by Dr. David J. Myerson of the Worcester State Hospital to the Third District Court of Southern Worcester in connection with a separate charge against the petitioner.

The proof on the part of the Commonwealth indicated that the petitioner entered Turple's Pharmacy on the afternoon of October 29, 1975, and, after browsing, handed an employee a note reading, "Get me the money," and pointed a gun at her. She surrendered $79 to him in a prescription bag. Shortly afterwards he was arrested in the neighborhood and identified by the employee. The gun, note, and bag with $79 were on his person. The weapon was a starter pistol, incapable of discharging a bullet. Taking the stand in his own defense, the petitioner said he did not have the pistol in his possession until after the time of the alleged robbery. As noted, the judge was content to convict the defendant of unarmed robbery.

It was the petitioner's contention that upon such a record the conviction must be vacated as a matter of constitutional due process. The case of *Boykin* v. *Alabama*, 395 U.S. 238 (1969), was interpreted by this court in *Commonwealth* v. *Foster*, 368 Mass. 100, 102-103 (1975), as laying it down for State courts that the conditions of an effective guilty plea — that the defendant acted voluntarily and with understanding — must appear from the very transaction in court at the time, ordinarily through a colloquy between the judge and the defendant; without such a

demonstration the plea is defective and the conviction may be successfully attacked even though adequate proof of the requisite conditions is otherwise available.[4] *Boykin* is reflected in Mass. R. Crim. P. 12, *post* 866 (effective July 1, 1979). See the analogous Fed. R. Crim. P. 11; *McCarthy* v. *United States,* 394 U.S. 459 (1969). Cf. *United States* v. *Timmreck,* 441 U.S. 780 (1979).[5]

In respect to waiver of trial by jury, there has been a requirement that the defendant sign an appropriate form (see G. L. c. 263, § 6; Mass. R. Crim. P. 19 [a], *post* 888 [effective July 1, 1979]); a colloquy has not in terms been required.[6] The petitioner states, correctly, that a conviction cannot stand which follows upon a jury waiver that is not freely and knowingly given. See *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 275 (1942); *Johnson* v. *Zerbst,* 304 U.S. 458, 464 (1938). Then, reasoning from the *Boykin* case, the petitioner contends that, like a guilty plea, a waiver of jury must be supported constitutionally by a contemporaneous colloquy in court.

The question has arisen in Federal courts, where Fed. R. Crim. P. 23 (a) looks to a written jury waiver but does not require a colloquy, and the like question has arisen in State courts. The general view appears to be that there

[4] This reading of *Boykin* as to the receipt of extrinsic evidence was not universally accepted at the time of *Foster* (see 368 Mass. 100, 103 n.2 [1975]), and is not today. See *Wood* v. *Morris,* 87 Wash. 2d 501, 505-508 (1976).

[5] *Timmreck* (which did not cite *Boykin*) can be understood as holding that a deviation, called technical, from Fed. R. Crim. P. 11 was not ground for collateral postconviction relief, in part because the details of that rule are not constitutionally based. *Id.* at 784-785. *Timmreck* does not appear to deviate from the prior decision in *McCarthy* that failure to comply with rule 11 is zealously reviewed when raised on direct appeal seeking a new trial.

[6] But in *Commonwealth* v. *Morrow,* 363 Mass. 601, 605 (1973), it was suggested that in interrogating a defendant who desired to plead guilty, it would be well for the judge to inquire as to the defendant's "understanding waiver of the three constitutional rights" implicated, one of which is the right to trial by jury.

is not such a constitutional requirement, and that, when the validity of a jury waiver is attacked, the necessary proof may be made through facts or occurrences outside the proceeding in which the waiver was formally made and accepted. See *Estrada* v. *United States*, 457 F.2d 255, 257 (7th Cir.), cert. denied, 409 U.S. 858 (1972); *United States* v. *Mitchell*, 427 F.2d 1280, 1282 (3d Cir. 1970); *United States* v. *Straite*, 425 F.2d 594, 595 (D.C. Cir. 1970); *United States* v. *Hunt*, 413 F.2d 983, 984 (4th Cir. 1969); *State* v. *Jelks*, 105 Ariz. 175, 178 (1969) (with a dissent); *Quartz* v. *State*, 258 So. 2d 283, 284 (Fla. Dist. Ct. App. 1972); *State* v. *Olivera*, 53 Haw. 551, 554 (1972) (with a dissent); *Kindle* v. *State*, 161 Ind. App. 14, 21-22 (1974). But see *Walker* v. *State*, 578 P.2d 1388, 1390 (Alas. 1978); *Short* v. *Commonwealth*, 519 S.W.2d 828, 833 (Ky. 1975). Waiver of a jury, although certainly an important election, still leaves in place another form of fact finding; it has not as much weight or consequence as a guilty plea, which is tantamount to a conviction and involves implicitly (as the *Boykin* case reminds us, at 243) the waiver of three constitutional rights — to confront adverse witnesses, to be free of compulsion to testify against oneself, and to be tried by jury (where a jury is demandable).[7]

To be sure, there is no precise way to compare the value of one right with another. Still it is not unreasonable for courts to refrain, in the case of the jury right, from constitutionalizing a particular means of demonstrating the legality of the waiver. We too decline to take the step.

The courts, listed above, which have refused that step nevertheless have stressed the desirability of solemnizing

---

[7] The factors entering into an understanding and willing guilty plea are of so ramified a character that inquiry by a judge may be thought not only desirable but indispensable. Cf. *Henderson* v. *Morgan*, 426 U.S. 637 (1976); *Allard* v. *Helgemoe*, 572 F.2d 1 (1st Cir.), cert. denied, 429 U.S. 858 (1978). Jury waiver partakes more of a decision regarding trial strategy. See generally Comment, Criminal Waiver: The Requirements of Personal Participation, Competence and Legitimate State Interest, 54 Cal. L. Rev. 1262 (1966).

the jury waiver, and providing a clear record of it, by means of a conversation between judge and defendant when the waiver is made; this should be in addition to the written memorial. See also *State* v. *Irving*, 216 Kan. 588, 590 (1975); *State* v. *Boilard*, 359 A.2d 65, 68 n.4 (Me. 1976). And experience indicates that the practice ought to be prescribed rather than left to choice: so a Federal Court of Appeals recently concluded in laying down a supervisory instruction for the circuit. *United States* v. *Scott*, 583 F.2d 362, 363-364 (7th Cir. 1978). For jurisdictions which have acted by statute or rule, see *Jackson* v. *United States*, 262 A.2d 106, 108-109 (D.C. App. 1970), and D.C. Code § 16-705(a) (1973);[8] *Commonwealth* v. *Morin*, 477 Pa. 80, 84-88 (1978), and Pa. R. Crim. P. 1101 (1979); *Biddle* v. *State*, 40 Md. App. 399, 400-402 (1978), and Md. Rules of Procedure 735(d), Md. Code Ann. (Michie 1977). See also ABA Standards Relating to Trial by Jury § 1.2(b) (Approved Draft 1968). We agree that the matter should be made firm, and therefore declare, in aid of sound judicial administration, that from the date of the issuance of a rescript upon this opinion, twenty-eight days hence, the colloquy shall be held in any instance of a waiver of the right to trial by jury. This shall be in addition to other requirements now applicable to such waiver. Any appropriate rule changes will be promulgated in due course.

In the exchange, the judge will advise the defendant of his constitutional right to a jury trial, and will satisfy himself that any waiver by the defendant is made voluntarily and intelligently. We do not intend to create a rigid

---

[8] The Jackson court said: "In this time of clogged criminal dockets we simply cannot dissipate judicial and prosecutive resources, already stretched too thin, in attempting to reconstruct skimpy records or to fill the void in empty records on appeal.... [I]t is not too much to require that [trial judges] take the several minutes necessary to ascertain from a defendant that he understands the action he is taking when he chooses to proceed to trial without a jury, so that the record of proceedings is adequate to withstand subsequent challenge." 262 A.2d at 108-109.

pattern but note that, where a defendant needs a compendious reminder, the judge might state that the jury consists of members of the community, that the defendant may participate in their selection, that the verdict of the jury must be unanimous, that they decide guilt or innocence while the judge makes rulings of law in the course of the trial, instructs the jury on the law, and imposes sentence in case of guilt; and that, where a jury is waived, the judge alone decides guilt or innocence in accordance with the facts and the law. The judge should make sure that the defendant has conferred with his counsel about the waiver, and that he has not been pressured or cajoled and is not intoxicated or otherwise rendered incapable of rational judgment. See *People* v. *Miller*, 7 Cal. 3d 562, 566-567 (1972).[9]

We add that the judge's responsibility should not be "discharged as a mere matter of rote," but rather "with sound and advised discretion" (*Patton* v. *United States*, 281 U.S. 276, 312 [1930]), as befits the relinquishment of so vital a right. On the other hand, "[a]n intelligent waiver does not require that the accused have the skill or knowledge of a lawyer" (*Maynard* v. *Meachum*, 545 F.2d 273, 279 [1st Cir. 1976]); the defendant, being competent, must simply have indicated a comprehension of the nature of the choice. In most cases, the conversation should take but a few minutes.

In the interest of saving judge-time, consideration ought to be given to the formulation of rules by which clerk-magistrates (see G. L. c. 221, §§ 62B-62C) might be

_____

[9] As noted, one of the purposes of a contemporaneous colloquy is to avoid postconviction proceedings, but if a defendant asserts that despite a seemingly adequate exchange there was coercion, mental incompetency, or other factors that belied the record showing, such a proceeding would be perforce appropriate. Cf. *Commonwealth* v. *Foster*, 368 Mass. 100, 104 n.3 (1975); *Fontaine* v. *United States*, 411 U.S. 213 (1973) (per curiam). But here the defendant should have to rebut the prima facie validity of the waiver. See *Huot* v. *Commonwealth*, 363 Mass. 91, 100 (1973); *Carnley* v. *Cochran*, 369 U.S. 506, 516 (1962).

authorized to carry out the duties above described with respect to jury waiver. Of course the colloquies by clerk-magistrates would be recorded, just as they will be when conducted by the judges.

Especially because the new requirement announced in this opinion is not derived from the Constitution, it may be and is made completely prospective. See *United States* v. *Scott, supra* at 364; *Jackson* v. *United States, supra* at 109. Cf. *England* v. *Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 422 (1964). Indeed, even if it were constitutional it would not have to be given retroactive effect, although a question could then arise about its applying to the instant case. See *Desist* v. *United States*, 394 U.S. 244, 255 (1969) (Douglas, J., dissenting); 1B Moore's Federal Practice par. 0.402, at 3.-2-1 — 3.-2-4 (2d ed. 1974).[10]

2. *Validity of the waiver in the present case.* We turn to the larger story as it unfolded before the master (various details are elided). In 1957, the petitioner, then seven years old, was sent to Wrentham State School where he resided until the age of twenty. Intelligence tests given at various times indicated, in general, progressively higher I.Q. scores in the 61-75 range. The petitioner learned to read and write through a Harvard tutorial program after leaving Wrentham.

But he had serious trouble conforming to the law after departure from Wrentham. In January, 1973, he pleaded guilty to indictments filed in November, 1972, for breaking and entering, larceny, and arson (arising from one

---

[10] On the whole question of retroactivity, it is of course significant that loss of the jury right still leaves intact the right to trial by a judge, so the new requirement does not go to the "very integrity of the fact-finding process." *Linkletter* v. *Walker*, 381 U.S. 618, 639 (1965). Moreover, without the benefit of the new requirement, those in the petitioner's position may offer extrinsic evidence in attempting to show that their jury waivers were invalid. See *Johnson* v. *New Jersey*, 384 U.S. 719, 730 (1966). See also *Stovall* v. *Denno*, 388 U.S. 293, 297 (1967).

incident), and was sentenced to two years' probation. By April, 1973, he had been tried, jury waived, on indictments for arson and related offenses. It appears there had been a report finding him competent to stand trial. The earlier probation was surrendered. After commitment of the petitioner to Bridgewater State Hospital for twenty days pursuant to G. L. c. 123, § 15 (e), for observation and report to assist in sentencing, the judge in May, 1973, imposed concurrent sentences of three to five years at M.C.I. Walpole to be served at M.C.I. Bridgewater. The record discloses in the same month a petition by the acting medical director of Bridgewater State Hospital for the civil commitment of the petitioner for six months because of the "dangerousness of his behavior" and his "symptoms of mental illness and apparently retardation."

Paroled in September, 1975, the petitioner was arrested on October 8 for making a false bomb report. He was detained for observation; this resulted in the report by Dr. Myerson. On October 29 he was arrested for the armed robbery, and the two reports by Dr. Reiner followed; the conviction for unarmed robbery and sentence thereon have been mentioned. The bomb charge was subsequently resolved, a jury having been waived, by a finding of not guilty by reason of mental illness, and the petitioner was committed to Bridgewater State Hospital for six months' hospitalization pursuant to G. L. c. 123, § 16 (b)-(c).[11]

Dr. Myerson found the petitioner had "poorly developed social judgment" and "lack[ed] the ability to con-

---

[11] The finding of lack of criminal responsibility with respect to the bomb scare is compatible with the petitioner's competence to stand trial or waive a jury as to the armed robbery even if the interval of time is disregarded, for the factors entering into the respective findings are different despite some possible overlap. Nor, apparently, did the master view his conclusion as inconsistent with the allegations in the petition for civil commitment, or (to go backward in time) testimony of the attorney who represented the petitioner on the 1972 offenses about his doubts regarding the petitioner's "mental capacity" (probably meaning criminal responsibility) at that stage.

form his conduct to the requirements of law without the support of a structured environment."[12] There was evidence of "some retardation in intellectual ability" but "no handicapping mental retardation." Dr. Reiner noted "a disciplinary management problem employing attention attracting devices (plugging toilets, slashing wrist[s]) to gratify his needs." Both doctors, however, found Ciummei aware of his current legal situation and able to cooperate with his attorney in a rational way—requisites of competency to stand trial. See *Dusky* v. *United States*, 362 U.S. 402 (1960) (per curiam); *Commonwealth* v. *Hill*, 375 Mass. 50, 52 (1978). The master gave these estimates "principal weight" on the question of Ciummei's capacity to waive a jury, and the judge may well also have done so. Indeed, the master remarked on the petitioner's ability to recall dates and facts of his prior trials—an indication that he could communicate with and aid his attorney.

The attorney who represented the petitioner on the robbery charge testified before the master. He knew the petitioner from having appeared for him on the 1972 and 1973 charges. He discussed jury waiver with the petitioner before the robbery trial (they had had similar conversations about jury waiver on other occasions). Counsel explained, as well, the nature of the offense and the evidence available to the Commonwealth. The petitioner indicated he was thinking of pleading guilty, but balked at the "armed" part of the charge. As the Commonwealth was unwilling to "plea bargain," counsel advised the petitioner that his best chance of conviction on a reduced charge was to go to trial before the judge alone. The ultimate decision as to jury waiver was left to the peti-

---

[12] A psychologist called by the petitioner described Ciummei as "an institutional robot ... accustomed to making decisions on a rote basis," highly susceptible to influence by others, and able to give a deceptively favorable impression of his mental ability. The master declined to consider this witness an expert and accorded credence to his testimony "principally as to those matters which can be observed of Ciummei by any intelligent adult observer."

tioner.[13] Counsel did not go into detail as to the composition of a jury and so forth, but it may be noted that the petitioner had had previous court experience. The master called counsel's explanations to the petitioner "careful and conscientious." Counsel testified, in sum, that the petitioner manifested no "lack of understanding" about his right to trial by jury.

The judge who accepted the jury waiver at the robbery trial had presided at all the petitioner's cases and could be expected to understand the petitioner's limitations. He heard the petitioner testifying in a rational and articulate way, as appears from the trial transcript.

Although the petitioner's appearance and testimony before the master postdated the robbery trial by more than two years, the master's remarks about his cognitive ability, as he observed it, are instructive. The petitioner, he said, was "in some degree confused as to the function of a jury," and his reading range was "certainly very limited," but his answers claimed rather more ignorance than was probably there, and he had read a book by a well-known trial lawyer with some appreciation.

On the whole, accepting the master's detailed subsidiary findings, but taking an independent view of the conclusion to be drawn (see *Central Tow Co.* v. *Boston*, 371 Mass. 341, 342 [1976]), we agree, as did the single justice, with the master's conclusion that the defendant "with reasonable knowledge and available advice of counsel" had "consciously and deliberately signed the waiver of jury trial."

We add that in speaking of competency to make an effective jury waiver, we refer to the same standard that applies in deciding whether a defendant is competent to stand trial. In *Commonwealth* v. *Morrow*, 363 Mass. 601, 607 (1973), which involved an attack on the validity of a

---

[13] The petitioner complains of this but it is quite probable that he would complain of any greater pressure from counsel as impairing his freedom of choice.

guilty plea, we said, "There is nothing in the record to indicate that the defendant was incompetent to stand trial. The same standard should be applied to the acceptance of a guilty plea." See also *Commonwealth* v. *Leate,* 367 Mass. 689, 696 (1975); *Allard* v. *Helgemoe,* 572 F.2d 1, 3-4 (1st Cir.), cert. denied, 429 U.S. 858 (1978); *Norwood* v. *State,* 74 Wis. 2d 343, 360 (1976). It is suggested in some opinions that a higher competency should be demanded for a waiver of jury or a guilty plea,[14] but those statements may perhaps be taken to mean that for a finding of intelligent waiver of a constitutional right it is not enough that a defendant shall be able to consult rationally with his counsel and comprehend the proceedings against him; he must be provided with adequate comprehensible information about the particular right, and that involves patient care where the defendant has limited education or mental resources. See *United States* v. *David,* 511 F.2d 355, 362 n.19 (D.C. Cir. 1975).[15]

*Judgment affirmed.*

---

[14] *United States* v. *Masthers,* 539 F.2d 721, 725-726 (D.C. Cir. 1976). *United States* v. *David,* 511 F.2d 355, 362 (D.C. Cir. 1975). *Sieling* v. *Eyman,* 478 F.2d 211, 214-215 (9th Cir. 1973). However, the difficulties with a double or multiple standard, including the limbo it might create for a defendant found able to stand trial but not permitted to plea bargain, have been noted in other opinions, e.g., *United States ex rel. McGough* v. *Hewitt,* 528 F.2d 339, 342 n.2 (3d Cir. 1976); *Kaplany* v. *Enomoto,* 540 F.2d 975, 985 (9th Cir. 1976). See also Note, Competence to Plead Guilty: A New Standard, 1974 Duke L.J. 149.

[15] We mention a matter which the petitioner sought to introduce late in the writ of error proceeding and which the single justice excluded.

The case of *Commonwealth* v. *Hill,* 375 Mass. 50, 62 (1978), was decided before the commencement of the master's hearing on the merits but evidently was not adverted to by either party. After the master filed his report, which mentioned the *Hill* case, the petitioner moved to amend his pleadings to add a *Hill* claim, but the motion was denied by the single justice. The *Hill* proposition is that where "a substantial question of possible doubt" should have arisen in the judge's mind about a defendant's competency to stand trial, he must proceed sua sponte to hold a hearing on the matter; not to do so creates a risk of miscarriage of justice. *Hill* recognizes that a postconviction review of the question of the defendant's competency to stand trial, which may come long after trial, is not as satisfactory as a contempo-

raneous inquiry. *Hill* was an extreme case where the judge was plainly put sufficiently on notice by suggestions as to incompetency by both defense counsel and an expert witness. Judging by the present record, we agree with the master that a hearing pursuant to *Hill* (in addition to the reception of the reports by Drs. Myerson and Reiner) was not required; the case more nearly resembled *Commonwealth* v. *Vailes,* 360 Mass. 522, 524-525 (1971). However, we cannot decide the point on the merits as the petitioner's proposed amendment was denied, evidently as untimely.