NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

HUNTER SETH HEDRICK,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12837
Trial Court No. 3AN-14-01925 CR

O P I N I O N

No. 2676 — September 4, 2020

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Emily Jura, Assistant Public Defender, and Beth Goldstein, Acting Public Defender, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD, writing for the Court.
Judge WOLLENBERG, concurring.

Hunter Seth Hedrick was charged with multiple felony assaults for an unprovoked attack on a hotel security guard and a hotel concierge. Hedrick subsequently waived his right to a jury trial and proceeded to a bench trial before a superior court

judge. After the bench trial had already begun, the State notified the court that it would be seeking a statutory aggravator under AS 12.55.155(c)(10) — *i.e.*, that the defendant's conduct was among the most serious included in the definition of the offense. There was no objection to this late notice.

Following the bench trial, the superior court found Hedrick guilty of the charged assaults. The superior court also found that the (c)(10) aggravator applied to Hedrick's conviction for first-degree assault and imposed an aggravated sentence of 21 years and 6 months to serve.

Hedrick now appeals, raising two claims. First, Hedrick argues that his jury trial waiver was invalid because (according to Hedrick) the superior court failed to adequately advise him of his right to a jury trial and the consequences of waiving that right. Second, Hedrick argues that he never waived his right to a jury trial on the (c)(10) aggravator, and he asserts that the State waived any right to rely on that statutory aggravator by failing to provide timely notice of the aggravator.

For the reasons explained in this decision, we reject Hedrick's first claim and we find that the superior court's general jury trial advisement, although limited, was adequate under our existing case law. However, we agree with Hedrick that he did not waive his right to a jury trial on the (c)(10) aggravator and his case must therefore be remanded for resentencing.

*Background facts*

On February 27, 2014, Hedrick was wandering the streets of Anchorage after drinking and fighting with his girlfriend. According to Hedrick, he was having a "mental breakdown." Hedrick spoke to his mother by phone. His mother told him to check in to a hotel room at the Springhill Suites at University Lake.

When Hedrick arrived, the concierge at the front desk informed Hedrick that there were no rooms available but that he would try to find him something. The concierge asked Hedrick to take a seat while he made some calls. Hedrick soon began cursing loudly in the hotel lobby, and the concierge asked him to quiet down. The hotel security guard approached Hedrick and informed him that if he did not stop cursing, he would be asked to leave.

Hedrick responded by striking the security guard several times with his fist. Both Hedrick and the security guard fell to the floor, and Hedrick continued to assault the guard — who already appeared unconscious — by hitting and kicking him in the head. The concierge jumped over the counter in an attempt to hold off Hedrick. Hedrick and the concierge then wrestled "around the whole of the lobby" until Hedrick eventually departed, after kicking the unconscious guard one more time. The entire assault was captured on video from three different angles and introduced into evidence at trial.

The security guard suffered extensive injury as a result of the assault; he was hospitalized and could not return to work for months. His jaw was wired shut, and he underwent multiple surgeries to reconstruct his face and right eye. He now wears dentures for his lost teeth and special glasses to alleviate the double vision he suffers from a detached retina in his left eye.

The hotel concierge was also transported to the hospital. His arm was broken in three places, and he spent six weeks with his arm in a cast. His radius and ulna were permanently curved by seven degrees as a result of the assault. (He testified that he could have this curvature fixed but declined surgery because he did not feel comfortable with people placing a titanium rod and screws in his arm.)

When Hedrick was arrested, he told the police that the security guard had come into his personal space and threatened him and that he had defended himself.

*Procedural history*

A grand jury indicted Hedrick on two counts of first-degree assault against the security guard under two different theories — (1) that Hedrick had acted with the intent to cause serious physical injury to the guard; and (2) that Hedrick had knowingly engaged in conduct that resulted in serious physical injury to the guard under circumstances manifesting an extreme indifference to the value of human life.[1]

The grand jury also indicted Hedrick on one count of second-degree assault against the concierge for recklessly causing him serious physical injury (*i.e.*, his broken arm).[2]

At a status hearing four days before trial began, Hedrick's attorney indicated that Hedrick wanted to waive his right to a jury trial and proceed with a bench trial. After personally addressing Hedrick, the superior court found that there was "a free, voluntary, and knowing decision to waive a jury trial and to have the case presented to [the court] for a bench trial." Hedrick, his attorney, the prosecutor, and the trial judge also signed a "Waiver of Trial by Jury" form, which listed the offenses charged.

The factual dispute at trial centered on Hedrick's mental state — specifically, whether he intended to cause physical injury to the security guard and whether he acted under circumstances manifesting an extreme indifference to human life. Hedrick testified that he had watched the videos and now realized that the security guard had done nothing to provoke the assault. But Hedrick explained that he felt under attack at the time because of the mental upset he was experiencing and because of his traumatic childhood. In support of this claim, Hedrick's attorney introduced evidence, through

---

[1]   AS 11.41.200(a)(2) and AS 11.41.200(a)(3), respectively.

[2]   AS 11.41.210(a)(2).

Hedrick's mother, that Hedrick's father was physically and emotionally abusive and that Hedrick had witnessed extensive domestic violence in the home.

On the first day of trial, the prosecutor stated that he intended to ask the court to find that the first-degree assault on the security guard was a "worst offense," explaining that it would "rest most definitely on the video and the photographs that already the court has." Hedrick's attorney did not object. At the conclusion of the closing arguments the next day, the prosecutor clarified that he was actually asking the court to find the statutory aggravator under AS 12.55.155(c)(10) — that Hedrick's conduct was "among the most serious conduct included in the definition of the offense." Hedrick's attorney again did not object to this request.

During closing arguments, the defense attorney acknowledged that the videos showed "one of the worst assaults [she'd] seen in [her] time as a lawyer." But she argued that the videos did not tell the full story — there was other evidence, including that of Hedrick's intoxication and his history of abuse, that created reasonable doubt as to whether Hedrick actually intended to seriously injure the security guard and whether he acted under circumstances manifesting an extreme indifference to the value of human life. With respect to the second-degree assault, the defense attorney argued that the concierge did not suffer "serious physical injury" under the statute because he did not have protracted loss of the use of his arm and could have elected to have surgery to prevent permanent disfigurement.[3]

The superior court took the matter under advisement and issued findings the next day. The court found Hedrick guilty of all three assaults, ultimately merging the two first-degree assault counts. The court also found the (c)(10) aggravator with respect

---

[3] *See* AS 11.81.900(b)(59)(B) (defining "serious physical injury" as "physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of a body member or organ").

to the merged first-degree assault conviction, explaining that "[a]bsent any dangerous instrument being used, that was as vicious an attack as I've ever seen in my career."

As a second felony offender, Hedrick faced a presumptive range of 8 to 12 years for the merged first-degree assault conviction and a presumptive range of 2 to 5 years for the second-degree assault conviction. The superior court also had the authority to sentence Hedrick up to the 20-year maximum sentence for the first-degree assault based on the court's finding of the (c)(10) statutory aggravator.

At sentencing, the superior court imposed the maximum sentence of 20 years for the merged first-degree assault conviction. The court also imposed 3 years for the second-degree assault conviction, with 18 months consecutive and 18 months concurrent to the first-degree assault conviction — for a composite sentence of 21 years and 6 months to serve. This appeal followed.

*Hedrick's claim that the superior court failed to adequately advise him of his right to a jury trial*

The Alaska and United States constitutions guarantee a defendant charged with a crime the right to a trial by jury.[4] However, a defendant may waive their right to a jury trial under Alaska Criminal Rule 23(a). This rule requires that waivers in felony cases be done in writing with the approval of the trial court and the consent of the State.

_____

[4]    U.S. Const. amends. VI, XIV; Alaska Const. art. I, § 11. The Alaska Constitution guarantees the right to a jury trial for all criminal offenses. *See Baker v. City of Fairbanks*, 471 P.2d 386, 401 (Alaska 1970). The United States Constitution limits this right to criminal offenses that include a possible term of imprisonment of more than 6 months. *See Baldwin v. New York*, 399 U.S. 66, 69 (1970) (establishing that a defendant is entitled to a jury trial whenever the offense for which he is charged authorizes imprisonment for more than 6 months); *see also Blanton v. City of N. Las Vegas*, 489 U.S. 538, 542 (1989) (reaffirming *Baldwin*, where the Court determined that the "possibility of a sentence exceeding six months . . . is 'sufficiently severe by itself' to require the opportunity for a jury trial").

The written waiver must be combined with an adequate personal inquiry of the defendant by the trial court to ensure "the waiver is voluntary and knowing."[5]

Here, the record shows that Hedrick executed both a written and oral waiver of his right to a jury trial. The oral waiver was accomplished on the record and included the following personal inquiry of Hedrick by the court:

> *The Court*: All right. Mr. Hedrick, your attorney has advised me that at this point you're prepared to waive a jury trial and have the case tried as a bench trial to me. Is that correct?
>
> *Mr. Hedrick*: Yes, sir.
>
> *The Court*: All right. And have you had enough time to talk to your attorneys about this decision?
>
> *Mr. Hedrick*: Yes, sir.
>
> *The Court*: And are you satisfied with the advice given to you?
>
> *Mr. Hedrick*: Yes.
>
> *The Court*: And by doing this, I need to make sure that you're doing this freely and voluntarily. Is that correct?
>
> *Mr. Hedrick*: Yes, Your Honor.
>
> *The Court*: And nobody has made any threat or promise to cause you to waive a jury trial.
>
> *Mr. Hedrick*: No, Your Honor.
>
> *The Court*: All right. And you're not under the influence of any medication or anything that might affect your decision in deciding to waive a jury trial and have the case presented to me as a bench trial.

---

[5] *Walker v. State*, 578 P.2d 1388, 1390 (Alaska 1978); *see Walunga v. State*, 630 P.2d 527, 528 (Alaska 1980) (explaining that Criminal Rule 23(a) "require[s] a personal inquiry by the court to determine whether the defendant's waiver is voluntary and knowing").

*Mr. Hedrick*: Yeah, I —

*The Court*: That's what you want to do?

*Mr. Hedrick*: Yes.

*The Court*: All right. I'll find there's a free, voluntary, and knowing decision to waive a jury trial and to have the case presented to me for a bench trial.

In addition to this exchange, Hedrick signed a court form titled "Waiver of Trial by Jury." The waiver stated: "I have been advised of my right to trial by jury. I waive trial by jury and request that I be tried by the court." The waiver listed the three charges Hedrick faced: "AS 11.41.210(a)(2): Assault 2 - Serious Injury, Reckless"; "AS 11.41.200(a)(3): Assault 1 - Serious Injury, Extreme Indif"; and "AS 11.41.-200(a)(2): Assault 1 - Serious Injury, Intent." This written waiver was also signed by Hedrick's attorney, the prosecutor, and the trial court.

On appeal, Hedrick argues that the personal inquiry was inadequate because the superior court failed to describe the benefits of a jury trial in detail, as well as the elements of each offense, before accepting Hedrick's waiver of his right to jury trial.

We do not agree with Hedrick that the court's inquiry was inadequate as a matter of law. The underlying question is whether Hedrick was provided with enough information to ensure that he knowingly waived his right to a jury trial. Here, the record shows that the trial court personally addressed Hedrick and specifically explained the consequences of waiving a jury trial.[6]

---

[6] *See White v. State*, 2007 WL 1098426, at \*4 (Alaska App. Apr. 11, 2007) (unpublished) (upholding waiver of the right to a jury trial where the "record, viewed as a whole, demonstrate[d] that [the defendant] understood and personally chose to waive jury trial" and showed "that [the superior court] addressed [the defendant] personally and explained the key differences between a jury and a bench trial").

In support of his claim, Hedrick cites *McGlauflin v. State* — a case in which we found the trial court's colloquy with the defendant inadequate.[7] But Hedrick's case is distinguishable from *McGlauflin*, where the trial court only asked McGlauflin a single question: "[A]re you . . . willing to waive the jury?"[8] We found this inquiry insufficient because the trial court failed to explain that waiving the right to a jury trial meant that the court would be the factfinder.[9]

Here, in contrast, the trial court did make clear that by waiving his right to a jury trial, Hedrick was agreeing to have the trial court decide his guilt. Although the trial court could have gone into more detail about the important features of a jury trial, the inquiry that occurred was in accord with other inquiries that have been upheld as adequate.[10]

The court also confirmed with Hedrick that he was not under the influence of medication and that there were no other influences that affected his decision to waive his right to a jury trial and have his case decided by the court. In addition, Hedrick did not hesitate or show any confusion about the rights he was waiving. Given these circumstances, we reject Hedrick's claim that the trial court failed to adequately advise him of his right to a jury trial before accepting his waiver of that right.

---

[7]  *McGlauflin v. State*, 857 P.2d 366 (Alaska App. 1993).

[8]  *Id.* at 368.

[9]  *Id.* at 369.

[10]  *See Dolchok v. State*, 639 P.2d 277, 279 n.4 (Alaska 1982); *Walunga*, 630 P.2d at 528 n.6 (Alaska 1980).

Hedrick also argues that, under the Alaska Supreme Court's case *Hutton v. State*, the superior court was required to describe the elements of each offense.[11]  But *Hutton* is distinguishable on its facts.  Hutton was charged with three offenses — first-, second-, and third-degree weapons misconduct.  At Hutton's request, the court bifurcated his trial so that the first- and second-degree weapons misconduct charges were tried to the jury first.  At this initial trial, the jury convicted Hutton of first-degree weapons misconduct, acquitted him of second-degree weapons misconduct, and found, in a special interrogatory, that Hutton knowingly possessed a concealable firearm.[12]  This special interrogatory constituted a guilty finding by a jury on one of the elements of the third-degree weapons misconduct charge.

However, there were two elements left of the third-degree weapons misconduct charge that still remained to be tried to a jury — whether Hutton had a prior felony conviction and whether he had acted in reckless disregard of that felony conviction at the time he possessed the concealable firearm.[13]

Hutton subsequently waived his right to a jury trial on the prior convictions element.  But Hutton was never advised of, and never waived, his right to a jury trial on the "reckless disregard" *mens rea* element.  On appeal, the Alaska Supreme Court

---

[11]  *Hutton v. State*, 350 P.3d 793 (Alaska 2015).

[12]  *Id.* at 794.

[13]  *Id.* at 798-99; *see* AS 11.61.200(a)(1) (third-degree weapons misconduct); *Afcan v. State*, 711 P.2d 1198, 1199 (Alaska App. 1986) (explaining that "recklessness [is] the applicable, culpable mental state with respect to the circumstances of [the] offense" and therefore "it was necessary for the state to establish that [the defendant] was aware of or recklessly disregarded the fact that he had been convicted of a felony").

vacated Hutton's conviction for third-degree weapons misconduct, finding that his waiver of jury trial was incomplete.[14]

Here, in contrast to *Hutton*, Hedrick did not waive his right to a jury trial on some, but not all, of the elements of a charged offense. Instead, he waived his right to a jury trial on all three charged offenses. Hutton was informed of the elements through his indictment, which included the elements of each offense. The elements of each offense were also listed — albeit, in shorthand fashion — in the written waiver of jury trial that Hedrick executed and that his attorney, the prosecutor, and the trial court judge all signed. Notably, Hedrick has pointed to nothing in the record to suggest that he was confused about the nature of the charges or the elements of the offenses.

Accordingly, we reject Hedrick's claim that his jury waiver was invalid as a matter of law because the superior court failed to advise him of the specific elements of the charged offenses.

*Hedrick's claim that he never knowingly and intelligently waived his right to a jury trial on the "most serious" aggravating factor under AS 12.55.155(c)(10)*

Pursuant to the United States Supreme Court decisions in *Apprendi v. New Jersey*,[15] *Blakely v. Washington*,[16] and *United States v. Booker*,[17] the state and federal

---

[14]  *Id.* at 799.

[15]  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

[16]  *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004) ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant
(continued...)

constitutional right to a jury trial extends to any fact (other than a prior conviction) that increases the maximum sentence a judge may impose. In accordance with this principle, AS 12.55.155(f)(2) provides that "*Blakely* aggravators"—*i.e.*, statutory aggravators that do not rely on prior convictions — must be presented to a trial jury unless the defendant "waives trial by jury, stipulates to the existence of the factor, or consents to have the factor proven under procedures set out in [AS 12.55.155(f)(1)]."

Hedrick argues that because he never expressly waived his right to a jury trial on the "most serious" aggravating factor under AS 12.55.155(c)(10) (a *Blakely* aggravator), the superior court was precluded from finding this aggravator at sentencing. The State argues that the superior court did not err in finding the aggravator because Hedrick's waiver of his right to a jury trial on the charged offenses automatically included waiver of his right to a jury trial on any statutory aggravators that might apply. According to the State, "waiver of the right to a jury trial includes both the guilt and sentencing phases of the case."

We disagree with the State that waiver should be presumed under these circumstances. Here, the record shows that Hedrick had no notice of the proposed statutory aggravator until *after* Hedrick had waived his right to a jury trial and the bench trial had already commenced. Because Hedrick was not on notice of the aggravator at the time he waived his right to a jury trial, we conclude that his waiver cannot reasonably be interpreted as including a knowing and voluntary waiver of his right to a jury trial on

---

[16]   (...continued) 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.").

[17]   *United States v. Booker*, 543 U.S. 220, 244 (2005) (reaffirming *Apprendi*'s holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt").

the statutory aggravator. We express no opinion as to whether waiver could be presumed in circumstances where the State provides timely pretrial notice of the proposed aggravator(s).

Having concluded that Hedrick did not knowingly waive his right to a jury trial on the "most serious" aggravator, we now turn to the question of prejudice. The State argues that there was overwhelming evidence that Hedrick's conduct was "among the most serious" and therefore any error was harmless beyond a reasonable doubt. Hedrick argues that this type of error is structural and not susceptible to a harmlessness analysis. Hedrick recognizes that we have previously held otherwise in *Milligrock v. State*, but he asserts that *Milligrock* is wrongly decided and should be overturned.[18]

We need not reach the question of whether *Milligrock* was wrongly decided because we conclude that a remand is required under the circumstances presented here. In *Milligrock*, we were able to conclude that the *Blakely* error was harmless beyond a reasonable doubt because the factual underpinnings of the "same household" aggravator were undisputed.[19] But that is not the case with the "most serious" aggravator at issue here. Although the defense attorney conceded the overall brutality of the assaults, she made various factual arguments about why the assaults should nevertheless not be found to be "most serious."[20] Because a jury might have resolved those factual questions

---

[18]  *Milligrock v. State*, 118 P.3d 11, 16 (Alaska App. 2005) (approvingly citing United States Supreme Court decisions holding that "courts must apply a harmless error analysis when assessing the effect of Sixth Amendment errors").

[19]  *Id.* at 17 (explaining that "the evidence was undisputed that Milligrock's assault was committed upon a woman who had lived with him for five years and who had born his child").

[20]  *Cf. State v. Parker*, 147 P.3d 690, 695 (Alaska 2006) ("The legislature intended for the 'most serious' aggravating factor and the 'least serious' mitigating factor to have a

(continued...)

differently than the judge and might therefore have reached a different conclusion regarding the existence of the aggravator, we cannot say that the error was harmless beyond a reasonable doubt, and we therefore conclude that a remand is required.

At the resentencing, the State is entitled to pursue any non-*Blakely* aggravators (*i.e.*, statutory aggravators based on a defendant's prior convictions[21]) that might apply — including, but not limited to, the (c)(19) aggravator identified by the State in its briefing on appeal.[22] If, however, the State intends to pursue statutory aggravators that require a jury trial, the superior court must either hold a jury trial or obtain a valid jury trial waiver from Hedrick.[23]

*Conclusion*

Hedrick's convictions are AFFIRMED, but his sentence is VACATED and this case is remanded to the superior court for a resentencing.

---

[20] (...continued)
limited scope.").

[21] *See* AS 12.55.155(f)(1).

[22] *See* AS 12.55.155(c)(19) (defendant's prior criminal history includes an adjudication as a delinquent for conduct that would have been a felony if committed by an adult).

[23] *See* AS 12.55.155(f)(2).

Judge WOLLENBERG, concurring.

I agree with the Court that the colloquy regarding Hedrick's jury trial waiver was adequate under Alaska case law.[1]  As Professor LaFave explains in his treatise on criminal procedure, although courts differ on precisely what a jury trial waiver colloquy should include, "detailed explanations about the jury right are generally not necessary."[2]  Here, the trial court made clear that, by waiving his right to a jury trial, Hedrick was agreeing to have the trial court decide his guilt.  The trial court also questioned Hedrick about whether he was under the influence of any medication or other substances that might affect his decision-making, whether his waiver was the result of any improper threats or inducements, and whether he had sufficient time to speak with his attorney.

At the same time, federal and state courts around the country strongly recommend that — as a matter of best practice — a jury waiver colloquy also include a description of the salient features of a jury trial.  These courts recognize that engaging a criminal defendant in a robust oral colloquy helps ensure that the defendant's waiver

---

[1]  *See, e.g.*, *Walunga v. State*, 630 P.2d 527, 528 n.6 (Alaska 1980).

[2]  6 Wayne R. LaFave et al., *Criminal Procedure* § 22.1(h), at 44 (4th ed. 2015); *see also People v. Sivongxxay*, 396 P.3d 424, 436 (Cal. 2017) ("[W]e have never insisted that a jury waiver colloquy invariably must discuss juror impartiality, the unanimity requirement, or both for an ensuing waiver to be knowing and intelligent."); *Davis v. State*, 809 A.2d 565, 569-70 (Del. 2002) ("The determination of whether there has been an intelligent and voluntary waiver depends upon the 'totality of the circumstances surrounding the particular case, including the background, experience and conduct of the accused.'" (quoting *Mealey v. State*, 347 A.2d 651, 652 (Del. 1975))); *Commonwealth v. Hardy*, 693 N.E.2d 1365, 1367 (Mass. 1998) ("[N]o rigid pattern . . . must invariably be followed in conducting a colloquy before accepting a waiver of the right to trial by jury." (internal quotation marks omitted)).

of the right to jury trial is both knowing and voluntary — and avoids later claims of an invalid waiver.

Almost uniformly, these courts encourage trial judges to advise defendants about the following four characteristics of a jury trial:

> (1) a jury is comprised of twelve community members (in felony cases) or six community members (in misdemeanor cases);

> (2) the defendant's attorney (or the defendant, if self-represented) may participate in the selection of the jurors from the panel summoned for jury service;

> (3) the jury's verdict must be unanimous; and

> (4) if the defendant waives the right to a jury trial, the judge alone will decide guilt or innocence.[3]

---

[3] *See, e.g.*, *United States v. Shorty*, 741 F.3d 961, 966 (9th Cir. 2013); *United States v. Lilly*, 536 F.3d 190, 198 (3d Cir. 2008); *United States v. Robertson*, 45 F.3d 1423, 1432 (10th Cir. 1995); *Marone v. United States*, 10 F.3d 65, 68 (2d Cir. 1993); *United States v. Martin*, 704 F.2d 267, 274-75 (6th Cir. 1983); *United States v. Delgado*, 635 F.2d 889, 890 (7th Cir. 1981), *abrogated on other grounds*, *United States v. Rodriguez*, 888 F.2d 519, 527-28 (7th Cir. 1989); *Sivongxxay*, 396 P.3d at 437; *State v. Feregrino*, 756 N.W.2d 700, 706 (Iowa 2008); *Ciummei v. Commonwealth*, 392 N.E.2d 1186, 1189-90 (Mass. 1979); *State v. Ross*, 472 N.W.2d 651, 654 (Minn. 1991); *State v. Redden*, 487 S.E.2d 318, 326 (W. Va. 1997); *see also State v. Blann*, 90 A.3d 1253, 1253 (N.J. 2014) (requiring that "an official jury waiver form containing the . . . four items be prepared for use" and that "trial judges engage in a colloquy with defendants that includes those four items, at a minimum, to assess the voluntariness of a waiver request"); *Commonwealth v. Williams*, 312 A.2d 597, 600 (Pa. 1973) (holding that, for a defendant to knowingly and intelligently waive the right to a jury trial, the defendant must know "the essential ingredients of a jury trial," including that the jurors will be drawn from members of the community, that the verdict must be unanimous, and that the defendant will be allowed to participate in jury selection).

These advisements are in addition to those case-specific inquiries that trial judges regularly make to ensure that a defendant's waiver of rights is knowing and voluntary — inquiries like those made by the trial judge in this case.[4]

I encourage trial judges to follow this guidance when engaging a criminal defendant in a colloquy regarding the decision to waive the right to a jury trial and have a bench trial. If defendants are informed on the record of the defining features of a jury trial, courts may more confidently answer the critical question of whether a criminal defendant understands that he has the right to have a jury decide the facts of his case — and that he is agreeing to forgo that right in favor of having his case decided solely by a judge.[5]

---

[4] *See Sivongxxay*, 396 P.3d at 437 (recommending that "the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails" — which may include "asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, . . . asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or . . . asking the defendant directly if he or she understands or has any questions about the right being waived"); *Ciummei*, 392 N.E.2d at 1189-90 (declining to create a "rigid pattern" for trial judges conducting a jury trial waiver colloquy but noting that a judge "should make sure that the defendant has conferred with his counsel about the waiver, and that he has not been pressured or cajoled and is not intoxicated or otherwise rendered incapable of rational judgment").

[5] *See Sivongxxay*, 396 P.3d at 437 (recommending that, going forward, trial courts advise a criminal defendant of the "basic mechanics of a jury trial in a waiver colloquy" and "take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails").