NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-442

COMMONWEALTH

vs.

JUAN G. HERNANDEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial, a District Court judge convicted the defendant of operating a motor vehicle while under the influence of drugs (marijuana), in violation of G. L. c. 90, § 24 (1) (a) (1).  The defendant appeals, arguing that (1) he did not validly waive his right to a jury trial because the judge's jury-waiver colloquy was inadequate, and (2) the trial judge inappropriately used observations that he made during the defendant's jury-waiver colloquy to infer guilt.  We affirm.

Background.[1]  1.  Facts.  The Commonwealth's sole witness at trial was a Massachusetts State police trooper.  He testified that around 3 A.M. on November 15, 2019, he saw the defendant's vehicle on the road and saw that it did not have a front license

_____

[1] We summarize the pertinent facts as the judge could have found them, reserving certain facts for later discussion.

plate.  Based on his understanding that a front plate is required for operating on public ways, the trooper followed the vehicle, which he determined to be traveling at thirty-five miles per hour in a "thickly settled neighborhood" with a posted speed limit of twenty miles per hour.  The trooper activated his blue lights and the defendant pulled over.

When the trooper approached the defendant's vehicle, he saw smoke come out of the defendant's window and encountered an "overpowering smell of freshly burnt marijuana."  The trooper noted that the defendant's eyes were red, bloodshot, and glassy.  When asked if he had smoked recently, the defendant admitted that he had smoked a "'blunt' about five minutes earlier."  The defendant repeatedly stated that his "house is right over there[.]  You don't have to do this. . . .  [I]t's right over there."

The trooper then asked the defendant to exit his vehicle. The defendant was unsteady on his feet and could not balance. The defendant also slurred his speech.  After confirming that he had not heard the defendant speak before, the trooper testified that he believed that the slurred speech seemed like that of someone who has consumed alcohol.

The trooper then asked the defendant to perform field sobriety tests.  While the trooper gave the test instructions, the defendant was swaying and had to raise his arms and move his

2

feet "in order to catch himself." During the one-leg stand test, the defendant was unsteady and could not maintain his balance. The defendant's speech was slurred during the counting portion of the test. The defendant could only hold his foot up for two seconds and had to use the trunk of his car to brace himself. The trooper had to stop the one-leg stand test for the defendant's safety.

During the walk and turn test, the defendant stepped off the imaginary line multiple times, swaying and using his arms for balance, and did not turn as instructed. The trooper believed that the defendant was under the influence of alcohol and drugs.

The trooper transported the defendant to the police station for booking. While proceeding to the station, there was a strong odor of alcohol inside the cruiser. At booking, the defendant still had red, bloodshot, and glassy eyes, and his speech was still slurred.

2. _Trial proceedings_. Immediately before trial began, the judge conducted a jury-waiver colloquy with the defendant as follows:

Q: "I'll ask [the defendant] some questions.

"Have you talked to your lawyer about your rights to go in front of a jury or a judge?"

A: "Yes."

Q: "All right. And, do you understand a jury [trial] . . . would be on a day different from today. And, in a jury trial, they would pick six people from the community. You bring a bunch of people and there'd be [eighteen] potential jurors. You select six. They sit in the box. The six decide the case. The standard of proof is proof beyond a reasonable doubt. To convict you or acquit you, the jurors all have to agree. If you're guilty, all six have to agree. If you're not guilty, all six have to agree. And, the standard of proof is proof beyond a reasonable doubt. Same standard of proof here. The difference is you don't get six jurors, you get one judge to decide. Now, I know nothing about the case.

"And, so, I know what the standard of proof is. I know what the government has to prove, but I know nothing about the case. I don't know what their evidence is. And, I know they got two charges. One for . . . being under the influence of drugs . . . [a]nd, one for alcohol.

"So, your lawyer can advise you [on] the pros and cons of going in front of a judge or a jury."

A: "Mm-hmm."

Q: "And, there are pros and cons. All right? And, that's up to your lawyer to decide. All right. And, when you select a jury, . . . you and your lawyer participate in a selection of the jurors, meaning you can make challenges for jurors for cause or not. Now, the decision, though, whether to go . . . in front of a jury . . . or a judge here is yours, all right? That's your choice, not your lawyer's. So, you can listen to his advice, but you've got to make the decision about which way you want to go. So, have you had a chance to talk to your lawyer about some -- and think about this?"

A: "Yes."

Q: "All right. And, what is your decision? Judge or jury?"

A: "Judge."

Q: "Okay. So, if you want to sign the waiver, I'll accept that. You're not under the influence of anything today?"

4

A: "No, sir."

Q: "You're not mentally ill today?"

A: "No, sir[.]"

The defendant did not object to the judge's colloquy.

The defendant then signed the required jury waiver under G. L. c. 263, § 6, after discussion with trial counsel. In addition, the defendant's trial counsel signed a certificate, as required by G. L. c. 218, § 26A, affirming that he had explained the relevant protections afforded by a jury trial to the defendant. The jury waiver form included the judge's certification that he found that the defendant's waiver of his right to a jury trial was knowing, intelligent, and voluntary, and was accepted.

After the trial, the judge found the defendant guilty of operating a motor vehicle while under the influence of marijuana.[2]

Discussion. 1. Waiver of jury trial. On appeal, the defendant first argues that the jury-waiver colloquy was inadequate because the judge did not specifically ask him "if

_____

[2] The judge also found the defendant not guilty of operating a motor vehicle while under the influence of intoxicating liquor, second offense, and not responsible for speeding. The judge sentenced the defendant to two years' probation, a fourteen-day inpatient program, and a two-year loss of license.

5

his waiver was voluntary or if he was pressured or cajoled into a jury waived trial."  We discern no error.

A judge must engage in a colloquy before accepting a criminal defendant's waiver of his right to a jury trial.  See Ciummei v. Commonwealth, 378 Mass. 504, 506-507 (1979).  However, "no particular form of words is required for an adequate jury trial waiver colloquy."  Commonwealth v. Garcia, 88 Mass. App. Ct. 307, 310 (2015).  See Commonwealth v. Hardy, 427 Mass. 379, 382 (1998), quoting Commonwealth v. Abreu, 391 Mass. 777, 779 (1984) ("We have said that 'no rigid pattern . . . must invariably be followed in conducting a colloquy before accepting a waiver of the right to trial by jury'").  Generally, the colloquy should include (1) whether the defendant has conferred with his counsel about the jury waiver and is aware of the differences between jury and jury-waived trials, (2) whether the defendant has been pressured or cajoled in his decision, and (3) whether the defendant is intoxicated or otherwise "rendered incapable of rational judgment."  Ciummei, supra at 509-510.

The colloquy may also contain statements regarding details of the jury trial right, to wit:  that the jury consists of members of the community; the defendant can participate in the jury's selection; the jury's verdict must be unanimous; the jury decides innocence or guilt while the judge makes rulings of law

6

in the course of the trial, instructs the jury on the law, and imposes sentence in case of guilt; and where a jury is waived, the judge alone decides guilt or innocence in accordance with the facts and the law. Ciummei, 378 Mass. at 510. Accord Hardy, 427 Mass. at 382-383. Along with the colloquy, there is also a statutory requirement of a signed written waiver. See G. L. c. 263, § 6; Mass. R. Crim. P. 19 (a), as appearing in 486 Mass. 1501 (2020). See also Abreu, 391 Mass. at 778 (colloquy must be conducted "contemporaneously with and before accepting any waiver").

"So long as a colloquy occurs, the sole focus of [appellate] review is whether the colloquy provided an evidentiary record on which the judge could find the waiver was voluntary and intelligent." Commonwealth v. Hendricks, 452 Mass. 97, 107-108 (2008). Accord Commonwealth v. Ridlon, 54 Mass. App. Ct. 146, 147 (2002) ("We review to determine whether the colloquy, together with the defendant's signature on the waiver form and defense counsel's certification that he informed the defendant of his rights, provided a sufficient basis for the judge to accept the defendant's waiver of a trial by jury" [citation omitted]). As the defendant did not object to the jury-waiver colloquy at trial, we review for a substantial risk of a miscarriage of justice. See id. at 147-150.

7

Here, the colloquy (and the jury waiver form) provided an adequate basis for the judge to accept the defendant's jury waiver as knowing, intelligent, and voluntary. The judge informed the defendant of his right to a jury trial and described the defendant's right to participate in the jury selection process, including that the jury would consist of "people from the community . . . [who] decide the case." See Ciummei, 378 Mass. at 509-510. The judge further advised the defendant that if he chose to waive his right to a jury trial and proceed with a bench trial, the judge was the one who would determine the defendant's guilt or innocence. The judge also informed the defendant about the standard of proof and that it was the same in both a jury trial and a jury-waived trial.

The judge confirmed that the defendant was given the time he needed to confer with his attorney. The judge also could rely on the certification of the defendant's trial counsel that he had explained the rights the defendant would forego by waiving a jury trial. Furthermore, the defendant confirmed his understanding that the decision to waive a jury trial was his alone. Indeed, at the end of the colloquy, the defendant decided unequivocally to go forward with a bench trial.

Finally, the judge was able to consider the defendant's demeanor and his responses to the judge's questions. See Hardy, 427 Mass. at 382-384 (judge's discussion of jury and bench

8

trials, waiver, and defendant's demeanor and responses sufficient evidence for judge's conclusion that waiver was "voluntary and intelligent").  The judge also determined that the defendant was not under the influence of drugs or alcohol, and the defendant denied any mental health concerns.

The defendant nevertheless contends that the jury-waiver colloquy was deficient because "[t]he judge did not ask the defendant if his decision was voluntary, or if he was promised anything in return for his decision."  As noted above, however, there are no specific requirements for such an inquiry.  See Ciummei, 378 Mass. at 509-510; Abreu, 391 Mass. at 779.  Moreover, while the judge did not specifically ask the defendant if his decision was voluntary or if he was promised anything in return for the jury waiver, the defendant did confirm his understanding that the decision to waive was his alone.  The judge's colloquy was sufficient to establish that the defendant "was acting with understanding and on his own volition" in waiving his right to a jury trial.  Commonwealth v. Onouha, 46 Mass. App. Ct. 904, 904 (1998).  See Commonwealth v. Hernandez, 42 Mass. App. Ct. 780, 783-785 (1997).  See also Garcia, 88 Mass. App. Ct. at 308-311 (jury waiver sufficient even though judge did not ask about defendant's education, did not ask whether any promises were made to defendant, did not provide

9

details of procedure of jury trial, and did not explain requirement of unanimity).[3]

2. <u>Pretrial observations by the judge</u>.  The defendant also argues that in determining the defendant's guilt, the judge improperly relied on the judge's own observation that the defendant did not slur his words during the pretrial jury waiver colloquy.  No reversible error occurred.

After the judge announced that he was finding the defendant guilty, he went on to further discuss the facts of the case.  During that discussion the judge stated:  "I'm satisfied [the defendant] was impaired. . . .  [I]t's clear to me that one of the causes was the marijuana of his inability to perform and the slurring.  I mean, I did a colloquy with him today.  There was no slurring.  I had no problem understanding him, you know.  So, you know, there was this slurring."  The defendant did not object to the comment.

On the record before us, it is unclear whether the judge's comment was made in connection with his finding of guilt, or whether it was made in connection with sentencing.  Assuming

---

[3] We decline the defendant's invitation to mandate a specific jury trial waiver colloquy.  See <u>Commonwealth</u> v. <u>Schofield</u>, 391 Mass. 772, 775 (1984) (Supreme Judicial Court "intended only to suggest some areas of inquiry that a judge might find useful in determining whether a defendant's waiver [is] voluntary and intelligent"); <u>Garcia</u>, 88 Mass. App. Ct. at 311 (noting Supreme Judicial Court has not provided requirements of what must be contained in jury-waiver colloquy).

10

that the comment was made in determining the defendant's guilt, such would be error, but in any event it did not result in a substantial risk of a miscarriage of justice.[4]

The evidence that the defendant was impaired was very strong, and the slurring of his words was at most a modest factor. The trooper testified that smoke came out of the defendant's window along with an "overpowering smell of freshly burnt marijuana." The defendant admitted that he smoked marijuana about five minutes before being stopped by the trooper. The defendant had red, bloodshot, and glassy eyes, and he was obviously unsteady on his feet. He performed poorly on the field sobriety tests. There was thus very strong evidence that the defendant was impaired by marijuana, independently of

---

[4] The defendant states that the comment was made "[d]uring sentencing." If the judge considered the observation in determining the defendant's sentence, there would be no error, as judges may consider a broad range of information during the sentencing phase. See Commonwealth v. Bianco, 390 Mass. 254, 259 (1983).

11

the observation that he was slurring his words.

Judgment affirmed.

By the Court (Green, C.J.,
  Englander & Brennan, JJ.[5]),

Assistant Clerk

Entered:  May 24, 2024.

---

[5] The panelists are listed in order of seniority.